■ ARNOLD L. OLENICK et al., Respondents, v. GOVERNMENT EMPLOYEES INSURANCE COMPANY et al., Respondents, and LIBERTY MUTUAL INSURANCE COMPANY, Appellant.— In a proceeding by Government Employees Insurance Company (GEICO) to stay arbitration upon the claims of its assureds, Arnold

L. Olenick and Bernice Olenick, under the uninsured motorist provision of their automobile liability insurance policy, which proceeding was treated at Special Term as an action for a declaratory judgment after addition of State Farm Mutual Automobile Insurance Company and Liberty Mutual Insurance Company, as parties, as possible insurers of an automobile owned and operated by Phyllistine Bryant or Lee Bryant, Liberty Mutual appeals from a judgment of the Supreme Court, Nassau County, dated December 21, 1971 and made after a nonjury trial, which (1) adjudged (a) that appellant afford defense and coverage, to the extent of its policy limits, to the Bryants for the accident in question, which occurred on October 31, 1969, and (b) that State Farm is not obligated to the Bryants for such defense and coverage; and (2) granted GEICO the stay of arbitration requested by it. Judgment modified, on the law and the facts, by striking therefrom the first and third decretal paragraphs thereof and substituting therefor a provision that Liberty Mutual Insurance Company is not obligated to afford defense and coverage for the accident in question, that the application to stay arbitration is denied and that arbitration shall proceed upon the claims of Arnold L. Olenick and Bernice Olenick against Government Employees Insurance Company. As so modified, judgment affirmed, without costs. The sole question raised on this appeal is whether or not Special Term erred when it concluded that a 1960 Pontiac convertible, which was involved in an accident, was covered under an automobile insurance policy issued with respect to a 1960 Buick sedan (both were cars of the Bryants). That policy, which was issued by Liberty Mutual to Phyllistine Bryant, the purported owner, contained a "replacement provision" which essentially provided that a newly acquired automobile which is acquired "by the named insured or * * * [her] spouse" is covered by the same policy issued with respect to the car originally insured, if, in fact, the newly acquired car replaces the originally insured car. We agree with Liberty Mutual that the word "replace", given its plain, ordinary meaning, means to supplant with a substitute or equivalent. Thus, in order for the Pontiac to have replaced the Buick, there must have been evidence showing that the Buick had been disposed of or was incapable of further service at the time of the replacement (see *Yenowine* v. *State Farm Mut. Auto. Ins. Co.*, 342 F. 2d 957; *State Farm Mut. Auto. Ins. Co.* v. *Shaffer*, 250 N. C. 45; *Mitcham* v. *Travelers Ind. Co.*, 127 F. 2d 27; *Lynam* v. *Employers' Liab. Assur. Corp.*, 218 F. Supp. 383). The instant record is barren of any such evidence. Special Term in this case has apparently assumed, merely from the acquisition of the Pontiac and the illegal affixing thereon of the plates registered to the 1960 Buick (there was no record that the plates were re-registered to the Pontiac), that the Buick had been disposed of or disabled and that thus the Pontiac became a vehicle covered under the "replacement provision" in Liberty Mutual's policy. We find, however, that upon such evidence the disposal of the Buick was a mere possibility, with no other circumstances to help it ripen into a probability. It is entirely possible, in our opinion, that the Buick could have been merely temporarily disabled and that the plates were removed and placed on the Pontiac. Indeed, this latter possibility can even be considered a probability, when considering the character of both the alleged owner and the driver of the Pontiac and certain other facts, noted hereafter, which were brought out at the hearing. Specifically, the record reveals that Lee Bryant, the driver of the Pontiac at the time of the accident, was issued summonses at the scene for driving without a license, driving an unregistered vehicle and driving an uninsured vehicle. The summonses have never been answered, warrants are outstanding and Lee Bryant has vanished from sight, despite extensive efforts

by Liberty Mutual and the authorities to find him. In addition, he had stated that he was the record owner of the 1960 Buick sedan (serial number 7C300-2384) when he applied for and was issued State Farm's policy, which was subsequently canceled for nonpayment of premium. With respect to Phyllistine Bryant, who, according to the police accident report, claimed she was the owner of the Pontiac, it is significant to note that, following cancellation of the State Farm policy, she asserted in her sworn application to Liberty Mutual for insurance that she was single, that she was the owner of the Buick automobile bearing the above-mentioned serial number (Special Term found that this was the same automobile which Lee Bryant said he owned in obtaining the State Farm policy), that she had no driver's license and that her car would be driven by one Amos Washington. She also set forth the serial number of Amos Washington's operator's license in her application. The latter, however, testified at the hearing that his license had been stolen, that he knew nothing about driving Phyllistine Bryant's car and, moreover, that during the month when the accident occurred he had observed Lee Bryant driving a 1960 Buick. Phyllistine Bryant also vanished soon after the accident and thus it is unfortunate that the only two persons who could shed some light on the question as to whether the Pontiac convertible was, in fact, a replacement vehicle under the terms of Liberty Mutual's policy are unavailable. In short, we are of the opinion that there was an insufficient basis in the record for Special Term to conclude that the 1960 Buick which was insured was "replaced", as that term has been construed. Accordingly, since there was a failure of proof as to whether the Pontiac was insured by Liberty Mutual pursuant to the "replacement clause" in the policy issued with respect to the Buick, Liberty Mutual's disclaimer of liability on the grounds of noncoverage must be sustained and the claimants left to resort to their claims under the uninsured motorist endorsement of their own policy issued by GEICO. Rabin, P. J., Hopkins, Martuscello, Shapiro, and Christ, JJ., concur. [68 Misc 2d 764.]