Annette **HEYMAN**, Plaintiff-Appellee,

v.

**COMMERCE AND INDUSTRY INSURANCE COMPANY,** Defendant-Appellant.

No. 92, Docket 75–7230.

United States Court of Appeals, Second Circuit.

Argued Oct. 10, 1975.

Decided Oct. 24, 1975.

Lawrence P. Weisman, Bridgeport, Conn. (Cohen & Wolff, P. C., Bridgeport, Conn., on the brief), for plaintiff-appellee.

John Keogh, Jr., Norwalk, Conn. (James J. Farrell, Norwalk, Conn., on the brief), for defendant-appellant.

Before KAUFMAN, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.

IRVING R. KAUFMAN, Chief Judge:

Although the basic principles for granting summary judgment[1] are well-established, the frequent recurrence of cases in which granting it is inappropriate persuades us that these underlying tenets bear repetition. In order to eluci-

date the impropriety of applying summary judgment in the present case involving the interpretation of an insurance settlement agreement, a brief review of the facts is appropriate.

Annette Heyman, a Connecticut resident, owns a shopping center in Westfield, Massachusetts. In April, 1972, she secured a three-year fire insurance policy on this property from the defendant Commerce and Industry Insurance Company. The policy contained a "Replacement Cost Coverage Endorsement" which permitted Heyman, in the event of fire loss, to elect to receive either "replacement cost" or "actual cash value." If she chose "replacement cost" reimbursement, the insurance company's liability would be limited to the smallest of the following amounts:

(a) The amount of this policy applicable to the damaged or destroyed property;

(b) the replacement cost of the property or any part thereof *identical* with such property on the *same* premises and intended for the *same* occupancy and use; or

(c) the amount actually and necessarily expended in repairing or replacing said property or any part thereof.

*Replacement Cost Coverage Endorsement,* Par. 5 (emphasis added).

On September 10, 1972, a one-story auto-service station/warehouse, 14,000 square feet in size, located in the Westfield shopping center and leased to Sears, Roebuck & Co. was totally destroyed by fire. Heyman promptly submitted a claim to the insurance company alleging the replacement cost of the destroyed property to be $247,265.

After a period of discussions and negotiations, the parties executed a settlement agreement on August 2, 1973. Among other recitals the third introductory clause stated that the

---

1. Fed.R.Civ.P. 56 provides, in relevant part:

. . . . . . .

(c) . . . [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact* and that the moving party is entitled to judgment as a matter of law. . . .
(Emphasis added.)

[I]nsured intends to construct a *new building* at the Sears, Roebuck complex in order to *replace* the building which was destroyed and construction of the new building has already commenced[.]

(Emphasis added.) The settlement agreement concluded with these provisions:

1. In consideration for payment by insurer to insured of $187,500, the parties for themselves, their successors and assigns, agree to remise, release, and forever discharge. any and all claims which they may have against each other arising under the above-mentioned insurance policy including, but not limited to, insured's claim in connection with the above-mentioned fire loss.

2. Payment of the $187,500 shall be made as follows:

$150,000 to be paid, all cash, upon execution of this agreement and $37,-500 to be paid, all cash, when insured has proceeded to the stage of construction of the *new building* where said building shall be water-tight—in other words, upon completion of construction of the walls and roof of said building. [Emphasis added]

The insurance company paid, as required, $150,000 upon execution of the agreement. It has refused to pay the additional $37,500 despite notification that the new building is "watertight." The reason assigned for the insurer's unwillingness to disburse the balance is its discovery that the "replacement" building is a single-story structure containing an area of only 4,000 square feet—some 10,000 square feet less than the size of the original building. The insurance company argues that its obligation is to pay the remaining $37,500 only if the destroyed building is replaced by a new edifice of comparable size and condition.

Because of Heyman's disagreement over this interpretation, she instituted suit in Connecticut Superior Court in August, 1974 for enforcement of the settlement agreement. The case was re-moved to federal district court one month later, and shortly thereafter both parties moved for summary judgment. Chief Judge Clarie granted Heyman's motion, holding that

A reading of the general tenor of the second contract and consideration of the circumstances under which it was executed, establishes a reasonable basis for the Court to find that the parties intended the company's fire loss obligations under the policy to be merged into this final [settlement] agreement. . . .

The Court is persuaded from the overall record, that these mutual release provisions were intended by the parties to determine and end their dispute. . . .

Although we might not have any quarrel with this conclusion had it been made after a full-scale trial, it was erroneous to render such a decision in the circumstances present here, upon a motion for summary judgment.

■■ The Federal Rules of Civil Procedure provide several tools to aid in ascertaining the facts before the curtain ascends on a trial, *see* E. Warren, 38 Conn.B.J. 3 (1964). One such "tool" is the Rule 56 summary judgment procedure which enables the court to determine whether the "curtain" should rise at all. *Fitzgerald v. Westland Marine Corp.*, 369 F.2d 499, 500 (2d Cir. 1966). Although for a period of time this Circuit was reluctant to approve summary judgment in any but the most extraordinary circumstances, *see, e. g., Arnstein v. Porter*, 154 F.2d 464, 468 (2d Cir. 1946), that trend has long since been jettisoned in favor of an approach more in keeping with the spirit of Rule 56, *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–90, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Dressler v. M. V. Sandpiper*, 331 F.2d 130 (2d Cir. 1964); *Beal v. Lindsay*, 468 F.2d 287, 291 (2d Cir. 1972). But, the "fundamental maxim" remains that on a motion for summary judgment the court cannot try issues of fact; it can only determine

whether there are issues to be tried. *American Manuf. Mutual Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.*, 388 F.2d 272, 279 (2d Cir. 1967); *Cali v. Eastern Airlines, Inc.*, 442 F.2d 65, 71 (2d Cir. 1971). Moreover, when the court considers a motion for summary judgment, it must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought, *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962), with the burden on the moving party to demonstrate the absence of any material factual issue genuinely in dispute, *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). This rule is clearly appropriate, given the nature of summary judgment. This procedural weapon is a drastic device since its prophylactic function, when exercised, cuts off a party's right to present his case to the jury. *Donnelly v. Guion*, 467 F.2d 290, 291 (2d Cir. 1972).

Heyman does not take issue with these principles but instead argues that they do not apply to her case. She correctly points out that the only disagreement in this action is over the interpretation of the "new building" language in the settlement agreement, and insists that discerning contractual intent is a question of law. But, this argument has repeatedly been rejected in our prior decisions.

> Where contractual language is susceptible of at least two fairly reasonable interpretations, this presents a triable issue of fact, and summary judgment would be improper.

*Aetna Casualty & Surety Co. v. Giesow*, 412 F.2d 468, 471 (2d Cir. 1969); *Painton & Co. v. Bourns, Inc.*, 442 F.2d 216, 233 (2d Cir. 1971); *Lemelson v. Ideal Toy Corp.*, 408 F.2d 860, 863 (2d Cir. 1969); *Union Insurance Society v. Wm. Gluckin & Co.*, 353 F.2d 946, 950–51 (2d Cir. 1965); *Boro Hall Corp. v. General Motors Corp.*, 164 F.2d 770, 772 (2d Cir.

1947). The parties have a right to present oral testimony or other extrinsic evidence at trial to aid in interpreting a contract whose provisions are not wholly unambiguous. *Asheville Mica Co. v. Commodity Credit Corp.*, 335 F.2d 768, 770 (2d Cir. 1964).[2]

> The point that the ultimate issue, the construction of a contract, is a question of law for the court, . . . does not dictate a different result. When a contract is so ambiguous as to require resort to other evidence to ascertain its meaning and that evidence is in conflict, the grant of summary judgment is improper. . . .

*Painton & Co., supra*, at 233. Nor is summary judgment to be made more readily available where both parties seek it, each in their own behalf. *American Mfrs. Mut. Ins. Co., supra*, at 279; *Painton, supra*, at 232–33.

> The well-settled rule is that cross-motions for summary judgment do not warrant the court in granting summary judgment unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed.

6 Moore's Federal Practice ¶ 56.13 at 2247.

Application of these principles to the facts in this case clearly indicates that it was erroneous to grant summary judgment to the plaintiff. The parties are at loggerheads over the proper interpretation of their obligations under the settlement agreement and, more specifically, about the intent behind—and meaning of—the term "the new building" in the clause providing for payment of the $37,500 balance "when insured has proceeded to the stage of construction of the new building where said building shall be watertight. . . . " The insurance company points to the third introductory clause—which recites Heyman's intention to construct a new building to "replace" the old one—and notes that Black's Law Dictionary and several

---

**2.** The parol evidence rule is not a bar to such testimony. The evidence does not vary or contradict the written terms of the contract,

but merely aids in their interpretation. *See* 3 Corbin, Contracts § 579 (1960).

cases define "replace" in terms of restoring an object to its former condition. *Olenick v. Government Employees' Ins. Co.,* 42 A.D.2d 760, 346 N.Y.S.2d 320 (1973); *Congress Bar & Restaurant, Inc. v. Transamerica Insurance Co.,* 42 Wis.2d 56, 165 N.W.2d 409 (1969). The insurer also maintains that the settlement agreement represented a mere partial integration, pertaining only to the *amount* agreed upon in satisfaction of Heyman's unliquidated claim under the insurance policy provisions. Although the appellee disputes each of these contentions, we are required to resolve all ambiguities and disagreements in favor of the party against whom summary judgment is sought, *see United States v. Diebold, Inc., supra,* 369 U.S. at 655, 82 S.Ct. 993.

We therefore reverse the judgment below. Of course, our holding reflects no opinion on the merits of the case.