Michael JUDGE, Plaintiff-Appellant,

v.

CITY OF BUFFALO,
Defendant-Appellee.

No. 177, Docket 75–7314.

United States Court of Appeals,
Second Circuit.

Submitted Oct. 14, 1975.

Decided Oct. 24, 1975.

Francis X. Murphy, Buffalo, N. Y., for plaintiff-appellant.

Leslie G. Foschio, Corp. Counsel, Buffalo, N. Y. (James J. McLoughlin, Asst. Corp. Counsel, Buffalo, N. Y., of counsel), for defendant-appellee.

Before KAUFMAN, Chief Judge, and SMITH and GURFEIN, Circuit Judges.

**1322**

IRVING R. KAUFMAN, Chief Judge:

■ Since we have today filed our opinion in *Heyman v. Commerce and Industry Insurance Company*, 524 F.2d 1317 (2d Cir. 1975), in which we fully discussed the principles of law applicable to the granting of summary judgment, we shall not tarry over the question here. As in *Heyman*, we face a single issue. In this instance it is whether the district judge correctly granted summary judgment for the City of Buffalo, N. Y., when he dismissed Michael Judge's complaint seeking an injunction and damages under 28 U.S.C. §§ 1331, 1343(3) to remedy alleged discrimination in hiring based on height. Although summary judgment under Fed.R.Civ.P. 56 can be a valuable tool for disposing of vexatious litigation and promoting prompt disposition of cases, *Empire Electronics Co. v. United States*, 311 F.2d 175, 179 (2d Cir. 1962); 10 Wright & Miller, Federal Practice & Procedure § 2711 at 364 (1973), it must be used selectively if we are to avoid trial by affidavit.

To improve police-community relations and overcome a lack of minority group representation on the city's police force, the City of Buffalo, N. Y. entered into an agreement in May, 1971 with the State of New York Office of Crime Control Planning, to establish a Community Peace Officer Program funded by the Federal Law Enforcement Assistance Administration (L.E.A.A.). Fifty candidates were to be appointed Community Peace Officers, to attend the Police Academy for training, and to serve in the police department for one year performing clerical and administrative duties during that time. After the expiration of that period, the Peace Officers would be appointed patrolmen, as positions became available, and given preference in hiring over candidates on the regular eligible list. According to the agreement of May, 1971 and Municipal Civil Service Commission Rules, the promotion to patrolman to fill a vacancy was to be automatic after the Peace Officer passed a medical examination.

Michael Judge was appointed a Peace Officer under this program on December 16, 1971. At that time, his height was 5'9"—exactly the minimum required for patrolmen under the Civil Service Commission Rules then in force. Unfortunately, while crossing a street during off-duty hours on February 27, 1972 Judge was struck by a car, severely injured, and subjected to a series of operations which required reductions on both of his legs—diminishing his height to 5'7". Although he resumed his duties as Peace Officer after recovering from the accident, his promotion to the position of patrolman never occurred.

On June 21, 1973, Judge instituted this federal action against the City, contending that he was being discriminated against because of his height, in violation, as he alleges, of the Constitution[1] and federal guidelines.[2] In April, 1974, the City filed a motion to dismiss the complaint, which the court treated as a motion for summary judgment. A cross-motion for summary judgment was filed by appellant. Affidavits were submitted by both sides in connection with these motions. Fed.R.Civ.P. 56(c), (e).

In support of his claim of discriminatory treatment, Judge cited a letter written to him on February 6, 1973 by William Cleary, Administrative Director of

---

1. Judge claims that he was denied equal protection guaranteed by the Fourteenth Amendment.

2. The L.E.A.A. "Equal Rights Guidelines" effective March 9, 1973, 38 Fed.Reg. 6415, provide in relevant part that

> The use of minimum height requirements, which disqualifies disproportionately women and persons of certain national origins and races, such as persons of Mexican and Puerto Rican ancestry, or oriental descent, will be considered violative to this Department's regulations prohibiting employment discrimination.

*Id.*, Sec. 4. Certain exceptions are made available by Section 5 of the Guidelines, but the City of Buffalo has not claimed that they are applicable.

the Municipal Civil Service Commission, which stated:

> At a meeting held on January 31, 1973, the Commission considered your eligibility for appointment to the position of Probationary Patrolman.
>
> The Commission noted that in your final medical for this position, you do not meet the height requirement. The Commission directed that your name be deferred for certification for the position of Patrolman until you are reached for appointment to this position, at which time, if you do not meet the height requirement, your name will not be certified as eligible for appointment to Patrolman and your appointment as a Community Peace Officer must be terminated.

The appellant bolstered his assertion that he was not promoted because of his height by recounting in an affidavit that he had been instructed to "stretch a lot" by the person who conducted his January 24, 1973 physical examination, and that he was recalled on two occasions during which nothing but his height was checked and discussed. The appellant also relied upon a letter dated September 9, 1973 from Stephen T. Joyce, M. D., to Anthony J. Colucci, President of the Civil Service Commission. Dr. Joyce's medical opinion was solicited by the Commission (following a request by the appellant for an independent medical evaluation), and Joyce reported in a July 6, 1973 letter his tentative conclusion that Judge's disability would not interfere with his performance as a Peace Officer. Colucci on July 19, 1973 requested a final report and wrote to Joyce that

> The medical examiner should understand that his examination is envisioning a candidate's physical condition for 20 years of police service. . . . [I]t is important to keep in mind in connection with the medical examination that the appraisal is being made,

not only as it exists at the time of the examination but is being projected over a career of 20 years or more filled with the difficult and exacting physical demands of police protection.

A copy of the physical standards for patrolmen was enclosed, and Joyce's September 9, 1973 response concluded:

> [A]fter again looking over your criteria, . . . I do not feel that the injuries this man sustained would interfere with the proper performance of his duties.

Despite this and other documentary evidence submitted by the appellant, Judge Curtin entered summary judgment for the city, finding that

> [Judge's] argument that defendant's refusal to certify him for appointment as patrolman was based upon his failure to meet the height requirement of five feet nine inches is not supported by any of the documents.

The district judge regarded the evidence as "clearly indicat[ing]" that the unwillingness to promote Judge was due solely to the Peace Officer's failure to pass an agility test.[3] For this reason, Judge Curtin considered it unnecessary to pass upon the constitutional issues raised.

▆▆▆ For essentially the same reasons set forth by us today in *Heyman v. Commerce & Industry Insurance Co., supra,* we reverse. Genuine issues of material fact which cannot be resolved on affidavits remain for determination after trial. *American Manuf. Mutual Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.,* 388 F.2d 272, 279 (2d Cir. 1967); *Cali v. Eastern Airlines, Inc.,* 442 F.2d 65, 71 (2d Cir. 1971); *Empire Electronics Co., supra,* at 179–80. The appellant must be afforded the opportunity of a trial at which he may present evidence in support of his contention that the City failed to appoint him as a patrolman solely because he was unable to satisfy the minimum height requirement and not because of failing the agility test.

---

3. Although appellant concedes that he participated in an agility test he strenuously denies that he failed it. The parties disagree over the exact score (if any) necessary to pass the test, and this is another issue which could not properly be resolved upon affidavits.

If he is right in this contention, and we express no opinion on the facts, Judge's claim for relief would stand on firmer ground.[4]

Reversed and remanded.

4. Judge Curtin held, as an additional reason for dismissing the complaint, that there was "no federal jurisdiction" on appellant's claim under the L.E.A.A. Guidelines, because they were intended for the benefit of certain minority groups of which Michael Judge is not a member. This holding was erroneous. Although the Guidelines were apparently promulgated with the special characteristics of these groups in mind, they are not by their terms limited in application to members of those races or the female sex. (We observe, in particular, the use of the word "disqualifies" rather than "disqualify" and the enclosure within commas of the phrases regarding those particularly benefited.) *See Taylor v. Louisiana*, 419 U.S. 522, 526, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); *Peters v. Kiff*, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972).