**NEW YORK CITY TRANSIT AUTHORITY and Manhattan and Bronx Surface Transit Operating Authority, Plaintiffs,**

v.

**EXXON CORPORATION et al., Defendants.**

**No. 74 Civ. 258.**

United States District Court, S. D. New York.

Feb. 25, 1976.

---

4. On receipt of such stipulation the court will, if warranted, schedule a hearing to dispose of the matters therein.

Stuart Riedel, Gen. Counsel, Brooklyn, N. Y., for plaintiffs; Gilbert T. Dunn, Lucius Smejda, Roy Warner, New York City Transit Authority, Brooklyn, N. Y., of counsel.

Shearman & Sterling, New York City, for defendants; George J. Wade, Joseph T. McLaughlin, Richard P. Lasko, Paul A. Merolla, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Defendants move for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, in this action brought by plaintiffs for damages allegedly resulting from the breach by defendant Exxon Corporation ("Exxon") of certain contracts which obligated Exxon to supply plaintiffs, New York City Transit Authority and Manhattan and Bronx Surface Transit Operating Authority, with diesel fuel for the operation of city-owned buses for the period from March 1, 1973 through February 28, 1974. Plaintiffs allege, and defendants admit, that defendant Exxon failed to supply such fuel after January 6, 1974, and that, pursuant to arrangements made between Exxon and American Oil Company ("Amoco"), plaintiffs received delivery from Amoco at a price higher than that contracted for with Exxon. However, defendants assert, as a complete defense for Exxon's non-compliance with the explicit terms of the contracts, that applicable federal regulations or state or common law, excused Exxon from its duty to perform under the contracts and, alternatively, that plaintiffs are barred from pursuing their claims by their conduct in ratifying the arrangement by which Amoco agreed with Exxon to supply plaintiffs with fuel from January 7, 1974 to February 28, 1974.

The federal statutory and regulatory scheme relied upon by defendants to exonerate Exxon from liability for breach of its obligations to plaintiffs was an emergency program to deal with the domestic fuel crisis arising in the summer and fall of 1973. Thus, in October, 1973, the Energy Policy Office issued the Mandatory Allocation Program for Middle Distillage Fuels [1] pursuant to the 1973 Amendments to the Economic Stabilization Act of 1970.[2] These regulations were in effect from November 1, 1973 to January 14, 1974 and were then replaced by similar allocation regulations promulgated by the Federal Energy Office under the authority of the Emergency Petroleum Allocation Act of 1973.[3]

Under this federal program for the equitable distribution of scarce fuel, each wholesale purchaser was to be supplied by his supplier of record during the corresponding month of 1972 with either "100% of the quantities purchased [in that month] or, if these quantities [were] not available, a proportional share of the supplier's allocable supplies." [4] And each supplier was specifically directed to "allocate all available supplies not exempt from allocation in accordance with the provisions of this program or face penalties or sanctions." [5]

In the instant case, Amoco was the supplier of record for plaintiffs for the months of November and December 1972, and Exxon for the months of January and February of that year. According to the regulations, Amoco was obligated to supply plaintiffs in November and December 1973 and Exxon in January and February 1974. However, the regulations permitted suppliers to "borrow or swap products among themselves" [6] and defendants claim that Exxon accordingly agreed with Amoco that it would supply plaintiffs during November and December and Amoco would take over Exxon's obligation, under the regulations, to supply plaintiffs in January and February. Thus, defendants argue that by delivering fuel to

1. EPO Reg. 1, 38 Fed.Reg. 28660 (Oct. 16, 1973).

2. 12 U.S.C. § 1904 Note (Supp.1975).

3. 15 U.S.C. § 751 et seq. (Supp.1975).

4. EPO Reg. 1 § 1, 38 Fed.Reg. 28660 (Oct. 16, 1973).

5. *Id.* § 10(a).

6. *Id.* § 4(e).

plaintiffs in November and December, Exxon was precluded by the federal program from delivering to plaintiffs after January 6, 1974, since it had already supplied plaintiffs' entire January and February allocations.

Under these circumstances, defendants rely on the provision of the regulations that:

"Compliance with this regulation or rules or orders issued pursuant to this regulation may not be excused on the basis of any private contractual obligation." [7]

and on the FEO regulation that:

"Compliance with the provisions of the regulations of this chapter shall make available a defense to any action . . for breach of contract in any Federal or State court arising out of delay or failure to provide, sell, or offer for sale or exchange any product subject to these regulations . . . ." [8]

to support their position that the federal regulations provide a complete defense to plaintiffs' action for breach of contract.

■ However, the FEO regulation also provides that "such defense shall be available only if such delay or failure was caused solely by compliance with the provisions of this chapter." [9] And plaintiffs contend that Exxon could have complied with both the contracts and the federal regulations concurrently, since it had access to supplies in excess of the amount subject to regulation. Plaintiffs rely on that provision of the regulations which defines "exempt volumes" as "those supplies of each middle distillate fuel available to a supplier that are in excess of his base period supply volume" and which excludes such supplies from regulation as "not subject to allocation." [10] Thus, plaintiffs argue that any such supplies available to Exxon, whether from a foreign or domestic source, could have been applied by it

to satisfy the contracts without violation of the federal law. Defendants respond by denying the availability of exempt supplies. But this is a material question of fact which is disputed and the information required to answer it rests with defendants. Thus, plaintiffs should not be foreclosed at this juncture from pursuing discovery on the issue, since defendants have failed to "demonstrate the absence of any material factual issue genuinely in dispute." [11]

■ And this also precludes granting defendants summary judgment on the basis of the state statutory or common law doctrine, asserted by defendants, that a party is excused from its contractual obligations when its performance is made impracticable by compliance in good faith with the law. Under such a theory, defendants must demonstrate that in order to comply with the federal allocation regulations Exxon necessarily had to cut off its deliveries to plaintiffs. Thus, the same material issue of fact as to whether or not defendant Exxon had access to "exempt volumes" exists and must await trial.

As an alternative ground for their summary judgment motion, defendants contend that plaintiffs are estopped from suing for breach of the contracts, since plaintiffs, in effect, ratified the supply arrangement entered into by Exxon and Amoco. Plaintiffs did not agree in writing to this substitution of suppliers so defendants rely exclusively on plaintiffs' "conduct" in receiving copies of the telegrams exchanged by Exxon and Amoco memorializing their agreement in thereafter stipulating to discontinue a state court action brought against Exxon and in accepting deliveries from Amoco.

Plaintiffs specifically deny that they approved the arrangement and, further, deny that they took any action to permit Exxon to free itself from its contractual obligations. Thus, whether plaintiffs are es-

**7.** *Id.* § 13.

**8.** FEO Reg. § 210.77, 39 Fed.Reg. 1924 (Jan. 15, 1974).

**9.** *Id.*

**10.** EPO Reg. 1 § 2, 38 Fed.Reg. 28660 (Oct. 16, 1973).

**11.** *Heyman v. Commerce Industry Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir. 1975).

topped from maintaining their action for breach of contract upon a claim of ratification of the arrangement entered into between Exxon and Amoco is to be determined from the parties' acts, conduct and all the surrounding circumstances which involve disputed issues of fact that must await trial.[12]

Accordingly, defendants' motion for summary judgment is denied.

---

**12.** *See Heyman v. Commerce Industry Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir. 1975).