Gloria **SCHWARTZ** and William Schwartz, Plaintiffs,

v.

**BOSTON HOSPITAL FOR WOMEN,** also known as Boston Lying in Hospital and Luke Gillespie, Defendants.

**No. 71 Civ. 1562.**

United States District Court, S. D. New York.

Nov. 11, 1976.

Fuchsberg & Fuchsberg, New York City, for plaintiffs.

Tell, Cheser, Breitbart & Lefkowitz, New York City, for defendant Boston Hospital for Women.

Alexander, Schwartz, Ash & Cohen, New York City, for defendant Dr. Luke Gillespie.

## MEMORANDUM

LASKER, District Judge.

Gloria and William Schwartz sue the Boston Hospital for Women and Dr. Luke Gillespie for damages resulting from alleged malpractice during the Caesarian delivery of Mrs. Schwartz' child in November, 1966. Plaintiffs claim that the Hospital and Dr. Gillespie were responsible for her subsequent infection and sterility by leaving a foreign object in her uterus, leaving in sutures which caused an infection and by improperly performing a "curettage" or scraping of the uterus. They also claim that Mrs. Schwartz was made part of a medical experiment in which the curettage was performed without her informed consent.

Defendant Boston Hospital for Women moves for summary judgment against the Schwartzes, claiming that the affidavits, depositions and other evidence affirmatively show as a matter of law that the hospital is not liable for any of her injuries. Dr. Gillespie joins in the motion for summary judgment on the questions of whether or not a foreign object was left in plaintiff's body and whether or not an "experiment" was conducted. Plaintiffs cross-move for summary judgment against the hospital and Dr. Gillespie.

Plaintiffs' cross-motion must be denied. The case bristles with unresolved factual disputes on the question of liability, e. g., whether or not plaintiff consented to have a curettage performed upon her; whether or not performance of the curettage was a deviation from standards of care for diabetic women in delivery; whether or not the curettage—or sutures—caused Mrs. Schwartz' subsequent sterility.

■ Defendant's motion for summary judgment is granted in part and denied in part. First, it must be noted that plaintiffs failed to file a statement in opposition to defendant's Rule 9(g) statement of material facts as to which it contends that there are no genuine issues for trial. In light of this failure all of the Hospital's assertions could be accepted as true and its motion for summary judgment granted in full. In fairness to plaintiffs, who should not be penalized for the oversight of their attorney, his affidavit in support of the cross-motion will be treated as a statement in opposition to defendant's Rule 9(g) statement.

Defendant is entitled to summary judgment on the question whether or not a "foreign object" (other than sutures) was left in plaintiff's body. Plaintiff has produced no evidence to support her claim that such an object was left in her body; indeed, her own expert's examination failed to discover any foreign body "as such", although suture material was found. Additionally, there is no issue of fact as to whether or not plaintiff was a private patient of Dr. Gillespie and that she paid for her operation. Accordingly, partial summary judgment is granted to the defendant on these issues.

■ The other issues raised in the summary judgment motion, which go to the hospital's liability, must await resolution at trial. Under New York law, a hospital is not liable for the negligence of a physician attending his private patient as long as hospital staff properly carry out the physician's orders, unless the hospital has actual reason to know or believe that the doctor's orders or procedures are "clearly contraindicated by normal practice" or unless a hospital staff member is negligent in performing the duties assigned him by the physician. *Toth v. Community Hospital at Glencove*, 22 N.Y.2d 255, 292 N.Y.S.2d 440, 449 n. 3, 239 N.E.2d 368 (1968); *Fiorentino v. Wenger*, 19 N.Y.2d 407, 280 N.Y.S.2d 373, 227 N.E.2d 296 (1967).

■ With respect to the suturing process, there is no evidence in the moving papers to indicate whether or not Dr. Gillespie was solely responsible for it, nor is it clear whether the sutures contributed to her infection. (Deposition of Dr. Angrist) The defendant, on whom the burden of proof falls at this juncture, has not shown that plaintiffs will be unable to show that hospital staff members were responsible for any damage caused by the suturing.

Two other factual issues relevant to the hospital's liability must be resolved at trial in the event that plaintiff establishes that the curettage was wrongfully performed: (1) whether the curettage was performed for a hospital research study on Maternal Infant Health Problems in diabetic pregnancies; and (2) whether performance of the curettage was such a deviation from good medical practice that the hospital staff was under a duty to question whether or not it should be performed.

Plaintiff claims she was the victim of an "experiment" which the hospital was conducting and of which defendant Gillespie was a director. It is conceded that the hospital was administering a study, financed by the National Institute of Neurological Diseases and Blindness, (NINDB) on Maternal Infant Health problems (MIH) and that Dr. Gillespie was the assistant project director of the Maternal Infant Health project at Boston Hospital for Women, with responsibilities for interviewing patients in the prenatal clinic and supervising tests and recordkeeping in connection with the study. Dr. Gillespie was paid by Boston Hospital for Women for the performance of these duties. Mrs. Schwartz concedes that she consented to be part of the "ancillary" study group of the MIH project at Boston Hospital, which consisted of pregnant, diabetic women, and which she understood to involve only the collection of statistical data. But she claims that she did not consent to the curettage, and that it was performed as part of the MIH project.

Dr. Gillespie testified quite emphatically that the decision to perform a curettage on Mrs. Schwartz was part of his standard treatment of diabetic women in childbirth and that it was not done for purposes of the MIH study. (Gillespie Deposition at 134)

Rather, he said, the curettage was performed so that he could study the patient's decidua to determine the effect of diabetes on the vascular system and in particular to determine if future pregnancies were advisable. (Deposition at 180–81) However, plaintiffs have adduced evidence indicated below which seems to contradict this testimony in part and permits a possible inference that the curettage was performed in order to permit gathering of data relevant to the MIH study.

Consistent with the testimony referred to above, Dr. Gillespie stated that Mrs. Schwartz' decidua should have been sent to the hospital pathologist for an analysis which should be reflected in hospital files, and that it should not have been and was not sent to the MIH project pathologist. However, Dr. Gillespie agreed that hospital records do not reflect any decidual study in Mrs. Schwartz' case. And plaintiffs' Exhibit E suggests that, contrary to this testimony, the Project Pathologist may have received and examined the decidua; this exhibit is a copy of a form made up by NINDB for the MIH project, and filled out by a Dr. S. G. Driscoll containing repeated notations that "decidual necrosis" was found. Moreover, Dr. Gillespie testified that he did not advise Mrs. Schwartz concerning future pregnancies even though this was the only specific reason he gave for performing the decidual study.

■ This evidence, viewed, as it must be, with all reasonable inferences drawn and ambiguities resolved in favor of plaintiffs, *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975) raises a fact question of whether the curettage was performed for purposes of the MIH study rather than to aid in the diagnosis and treatment of Mrs. Schwartz. The hospital does not assert lack of knowledge of Dr. Gillespie's standard technique of curettage, and thus, if the curettage was performed in aid of the MIH study rather than for reasons personal to Mrs. Schwartz, and if she did not consent to its performance and it caused her injury, the hospital could be found liable.

A second factual issue which precludes summary judgment is that plaintiffs' expert's affidavit raises a question whether the curettage was so counterindicated that hospital staff should have questioned Dr. Gillespie's order. Dr. Bernard Nathanson, a diplomate of the American Board of Obstetrics and Gynecology, swears that "It was a deviation from customary and usual obstetrical procedures in the United States for Doctor Gillespie to have performed a curettage upon GLORIA SCHWARTZ at the time of the Caesarian section. This was especially dangerous in a known diabetic. In my opinion, within a reasonable degree of medical certainty, the performance of said procedure was not medically indicated and was a departure from good medical practice. It was also a departure from customary and usual practice [and] was a competent producing cause and contributed to the infection, pelvic abscess, inability to have children, surgery and other injuries sustained by GLORIA SCHWARTZ." This presents a fact question (not resolved by defendant's opposing papers) of whether, regardless of the relationship between the curettage and the MIH study, hospital staff were under a duty to have questioned the doctor's procedure. We intimate no view, of course on the ultimate factual issue, but merely hold that the hospital's freedom from liability has not been so conclusively demonstrated as to warrant summary judgment.

Plaintiffs' motion for summary judgment is denied. Defendant's motion for summary judgment is granted to the extent that the court has determined that (1) no foreign object other than sutures was left in plaintiff's body and (2) Mrs. Schwartz was a private patient of Dr. Gillespie and paid for her own operation. It is otherwise denied.

Submit order on notice.