### In re The WALTER READE ORGANIZATION, INC., Debtor.

#### Bankruptcy No. 77 B 42.

United States Bankruptcy Court,
S.D. New York.

March 18, 1983.

Weil, Gotshal & Manges, New York City, for debtor.

Norman Mesnikoff, Asbury Park, N.J., for City of Asbury Park.

## MEMORANDUM AND ORDER

JOHN J. GALGAY, Bankruptcy Judge.

The Walter Reade Organization, Inc. ("Walter Reade"), the debtor in possession, has moved for summary judgment to disallow portions of the claim of the City of Asbury Park, New Jersey ("Asbury Park"). Based on all the papers submitted and oral argument presented, the Court finds that material issues of fact exist and, therefore, denies the summary judgment motion of Walter Reade.

### I. *Facts*

In 1961, Walter Reade and Asbury Park entered into a 20 year lease ("Lease") for the Paramount Theater which is located in Asbury Park, New Jersey. Among other terms, the Lease provided for two methods of termination by the lessor, Asbury Park. The first option allowed Asbury Park to reenter and relet the theater while Walter Reade remained liable for any difference between the contract rent and the rent actually received by Asbury Park from a new lessee ("Termination Option One"). The second option was a straight termination of the Lease with repossession of the theater by Asbury Park, concommitantly discharging Walter Reade of all future liabilities ("Termination Option Two").

In 1977, Walter Reade filed a Chapter XI petition under the Bankruptcy Act of 1898 ("Bankruptcy Act"). At that time Walter Reade owed $20,000.00 in rent to Asbury Park for the year 1976. Asbury Park commenced an adversary proceeding in the bankruptcy court to lift the automatic stay in order to enforce, in state court, municipal liens on other property owned by Walter Reade in Asbury Park and also in order to repossess the Paramount Theater. The proceeding was settled by stipulation, authorized by this Court on July 1, 1977 ("Stipulation").

The Stipulation reserved Asbury Park's right to file a claim and Walter Reade's right to object to any claim. Stipulation ¶ 4. Asbury Park filed a claim, seeking pre-petition rent, ("pre-petition claim"), post-petition use and occupancy ("use and occupancy claim"), damages arising from the termination of the Lease ("damage claim"). In response, Walter Reade brought this motion for summary judgment, asserting that the pre-petition claim is satisfied by setting off a $20,000.00 security deposit held by Asbury Park. Further, Walter Reade avers that the Stipulation terminating the Lease precludes any damage claim by Asbury Park against Walter Reade. The use and occupancy claim is not a subject of this motion.

### II. *Documents*

Initially, this Court must determine which documents it will examine in determining liability. Both sides agree that the Stipulation is valid and is binding upon them. However the Stipulation, by its own terms is ineffective without a court order. Stipulation ¶ 6. The order by which the Stipulation was approved and effected, did so based upon Walter Reade's "Application Authorizing Debtor in Possession to enter into Stipulation of Settlement with the City of Asbury Park, June 20, 1977" (hereinafter "Application"). Therefore, the Stipulation, depending as it does on the order and Application, should be read in conjunction with those two documents.

### III. *The Motion for Summary Judgment*

A motion for summary judgment will be granted only if no genuine issues of material fact exist. F.R.Civ.P. 56(b). "[T]he fundamental maxim remains that on a motion for summary judgment, the court cannot try issues of fact; it can only determine whether there are issues to be tried."

*American Manufacturers Mutual Insurance Co. v. American Broadcasting-Paramount Theaters, Inc.,* 388 F.2d 272, 279 (2d Cir. 1967); *cited in Cali. v. Eastern Airlines, Inc.,* 442 F.2d 65, 71 (2d Cir.1971); *Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317, 1319 (2d Cir.1975). In order to determine the liability of the parties in this case, the Court must be certain regarding what actually happened. If it is not, the motion must be denied.

At the outset, without considering the actual terms and language of the Application, order, and Stipulation, the Court perceives three possible paths the parties might have followed to terminate the lease: (1) Walter Reade could have rejected the Lease outright under Bankruptcy Act section 353; (2) Walter Reade could have rejected the Lease in conjunction with the exercise by Asbury Park of Termination Option One; or (3) Walter Reade could have rejected the Lease in conjunction with the exercise of Termination Option Two. In order to grant the motion for summary judgment, the Court must find that, regarding the course of action taken (as evidenced by the Application, order, and Stipulation), no dispute exists.

a. *The Lease was Rejected pursuant to a Court Order*

Prior to the settlement and Stipulation, Walter Reade remained in possession of the Paramount Theater under the Lease, although no rent was paid. Despite this prepetition breach by the debtor, no attempt to terminate the Lease was made by either side until after the commencement of the Chapter XI case.

Walter Reade first argues that the Stipulation was merely an exercise of a Termination Option under the Lease and, therefore, is not governed by Bankruptcy Act section 353, which fixes damages arising from the termination of a lease. Thus, Asbury Park would be precluded from filing any damage claim. This however ignores the language of section 353, which states: "In case an executory contract shall be rejected pursuant to the provisions of an arrangement or to the permission of the court given in a proceeding under this chapter . . . any person injured by such rejection shall . . . be deemed a creditor." In this case, the Stipulation terminating the Lease effectively rejected the Lease as well and was approved by a court order.

That the Stipulation was, in effect, a rejection of the Lease is supported by this statement in Walter Reade's Application: "If the applicant were to attempt to affirm the Lease. . ." the costs of curing the breach would be prohibitive. Application, ¶ 8. That affirmation costs of the Lease were deemed prohibitive indicates the order entered pursuant to the Application is properly viewed as a rejection of the Lease.

With the Lease having been deemed rejected, section 353 of the Bankruptcy Act applies. Section 353 provides:

> The claim of the landlord for injury resulting from the rejection of an unexpired lease of real estate or for damages or indemnity under a covenant contained in such lease shall be provable, but shall be limited to an amount not to exceed the rent, without acceleration, reserved by such lease for the three years next succeeding the date of the surrender of the premises to the landlord or the date of reentry of the landlord, whichever first occurs.

Section 353 does not fix a damage amount, but rather sets a ceiling on such damages. As one commentator has stated, "Section 353 does not authorize the allowance of a claim of three years' rent plus unpaid rent in all cases. The actual damage must be established." 9 *Collier on Bankruptcy* ¶ 7.15[6.1] (14th ed. 1981). The Lease itself may provide for damages. If there was an exercise of a covenant under the Lease, the remedy provided in that covenant would prevail, if damages were under the section 353 ceiling.

The measure of damages under Termination Option One of the Lease is analogous to the provisions of section 353—the difference between the actual rent, if any, received by Asbury Park from another lessee and the rent due from Walter Reade. If Termination Option Two was exercised, As-

bury Park would take possession and Walter Reade would be free from damage claims.

b. *The Stipulation*

Walter Reade argues that it is beyond dispute that Termination Option Two was exercised and that no claim for damages can arise. However, the actual language of the Application and Stipulation do not state clearly which course was chosen by the parties. While the Stipulation, in paragraph 3, states that the lease "is hereby terminated and the Paramount is hereby surrendered to the City", it does not state that either termination option of the lease is being exercised. Operating against the inference that this termination is an exercise of Termination Option Two are a number of facts.

First, in paragraph 6 of the Application, Walter Reade states that the City "seeks an order ... authorizing ... applicant to surrender possession of the Paramount to the City...." This provision corresponds more closely to termination Option One than Option Two. Option One provides: "[I]t shall be lawful for the [City] to reenter said premises and remove all persons therefrom...." Option Two provides: "[T]he [City] may at its option terminate this lease."

Second, in paragraph 10 of the Application, Walter Reade stated that it had attempted to get Asbury Park to release "all pre-petition and post-petition claims against applicant arising out of or with respect to the Lease...." The City refused and reserved its right to file claims in the Chapter XI case. Stipulation ¶ 4.

Third, paragraph 11 of the Application notes that there might be another tenant interested in the Paramount "which would result in the mitigation of any claim which the City may file in the within Chapter XI case." The combination of this provision and Asbury Park's reservation of its right to file a claim raises the possibility, not answered on the face of the documents, that the claims filed by the City under paragraph 5 of the Stipulation could include damages from termination, since they are the only damages that could be mitigated by reletting the Paramount.

Fourth, the Stipulation, in paragraph 1, lifts the stay "for the sole purpose of extinguishing any interest of Walter Reade in the underlying real property [subject to foreclosure proceeding for Certificate of Unpaid Municipal Tax Lien No. 33] held by Walter Reade." The stay was lifted only for the purpose of allowing Asbury Park to pursue its tax claim. It could have been lifted, as well, to allow Asbury Park to exercise one of the termination options under the Lease. This was not done. This raises a question whether Asbury Park was exercising any of its options under the Lease or just relying on the statutory remedy of section 353.

Based on the foregoing analysis, this Court cannot determine that no factual issue exists as to which if any termination option under the Lease was exercised.

IV. *Conclusion*

■ A motion for summary judgment is an assertion that there is no material dispute as to facts between the parties. Bankr.R.P. 756; F.R.Civ.P. 56. While no dispute exists over which documents are pertinent, there is dispute over the meaning of these documents. Normally a contract, like this Stipulation, must be read on its face without any parol evidence. However, if there is ambiguity, such evidence is applicable. J. Calamari & J. Perillo, *The Law of Contracts* § 3–11 (2d ed. 1977). In addition, the moving party bears the burden of showing that no material issue of fact exists and the evidence should be viewed in the light most favorable to the non-moving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); see F. James & G. Hazard, *Civil Procedure* § 6.18 (2d ed. 1977).

Considering the potential for divergent readings of the Application and Stipulation and the divergent results from those readings, this Court finds that material issues of fact are present. Therefore the motion for summary judgment must be denied, so far

as it applies to the claim by Asbury Park for termination damages.

It is so ordered.