In re WILLIAM B. KESSLER, INC., Debtor.

TUMINI ENTERPRISES, INC., Plaintiff,

v.

WILLIAM B. KESSLER, INC. and Heritage Bank, N.A., Defendants.

HERITAGE BANK, N.A., Third–Party Plaintiffs,

v.

ADAMS & REHMANN, INC., and Adams, Rehmann & Heggan Associates, Inc., Third-Party Defendants.

Bankruptcy No. 80 B 11966. Adv. No. 82 5332 A.

United States Bankruptcy Court, S.D. New York.

Nov. 5, 1984.

Fellheimer, Eichen & Goodman, Westmont, N.J., for plaintiff Tumini Enterprises, Inc.

Levin & Weintraub & Crames, New York City, for debtor.

Crummy, Del Deo, Dolan & Purcell, Newark, N.J., for defendant and third-party plaintiff Heritage Bank, N.A.

Morris, Graham, Stephens & McMorrow, Jericho, N.Y., for third-party defendants Adams & Rehmann, Inc. and Adams, Rehmann & Heggan Associates, Inc.

## DECISION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT

EDWARD J. RYAN, Bankruptcy Judge.

On November 21, 1980, William Kessler, Inc., (debtor) filed a petition under Chapter 11 of the Bankruptcy Code. No trustee has been appointed, and the debtor remained in possession.

In a written agreement dated September 21, 1981 and amended September 24, 1981 (Agreement), the debtor agreed to sell to Tumini Enterprises, Inc. (TEI) real property owned by the debtor in Hammonton, New Jersey for a purchase price of $600,000. Upon execution of the Agreement, TEI deposited $60,000 with Heritage Bank, N.A. (Heritage) as provided by the Agreement. This deposit was to be returned with interest to TEI if the debtor was unable to convey good title as required by the Agreement.

The Agreement specifically provided the following: (1) the property was to be free and clear of all liens and encumbrances; (2) title to the property had to be good and marketable; (3) title had to be insurable by Commonwealth Land Title Insurance Company (Commonwealth) at its regular premium, subject only to certain standard printed exceptions; and (4) the title report had to be approved by and acceptable to TEI's attorneys.

The Agreement further provided that TEI "upon acceptance of this Offer shall have the subject property insured against loss of fire in a sum not less than $600,000.00 at its own expense." On October 17, 1981, TEI purchased such a fire insurance policy.

Closing was scheduled for January 8, 1982.

After execution of the Agreement, TEI had applied for title insurance from Commonwealth, and a land survey (1981 Survey) was ordered from Adams, Rehmann & Heggan Associates, Inc. (the Surveyor).

A title report was issued by Commonwealth on October 1, 1981 and amended on January 4, 1982, which listed only the standard exceptions.

On January 4, 1982, the Surveyor informed TEI that there were five encroachments on the property, one of which was a factory building which encroached four inches onto property owned by Kessler Corp., a subsidiary of the debtor. In a notarized letter dated January 25, 1982, Chris Rehmann, one of the principals of the Surveyor, certified that this was a "substantial encroachment". The President of TEI, Alfonso Tumini (Tumini), advised Commonwealth of the encroachments, and was told they would be listed as exceptions to Commonwealth's title policy. On January 22, 1982, Commonwealth issued an endorsement to the title report, listing the encroachments as exceptions.

By letter dated January 6, 1982, Tumini informed the debtor's attorney that he was terminating the Agreement, and demanded return of the $60,000 deposit with interest. The debtor's attorney, by letter dated January 15, 1982, informed Tumini she was rescheduling the closing for January 27, 1982, and that if Tumini did not close on that date, the debtor would be relieved of all obligations under the Agreement and could remarket the title.

On January 8, 1982, TEI, cancelled the fire insurance policy due to the debtor's alleged breach of the Agreement, having paid $4,222.80 for insurance coverage for

the period from October 17, 1981 through January 9, 1982.

On March 3, 1982, TEI, by summons and complaint, commenced an adversary proceeding in this court against the debtor and Heritage. Count I alleged breach of the conditions of the Agreement, including inability to convey good title free and clear of liens and encumbrances. Count II alleged conversion of the $60,000 deposit. Count III alleged lost profit and opportunities as a result of defendants' failure to return the deposit. Count IV alleged unjust enrichment of the debtor from insurance premiums on the property paid by TEI from October 17, 1981 to January 9, 1982.

TEI sought return of the $60,000 deposit plus interest, closing costs of $5,000, reimbursement for the insurance premiums, as well as punitive and consequential damages in excess of $110,000.

By notice of motion dated June 15, 1984, TEI now seeks partial summary judgment on Counts I, II and IV of the Complaint. A hearing was held on this motion on September 6, 1984.

TEI contends that because the debtor could not convey good and marketable title free of liens and encumbrances at the time of closing in January 1982, it has breached the Agreement, entitling TEI to summary judgment in its lawsuit.

Further, TEI contends that the provision for fire insurance in the Agreement was modified by agreement with Chester Kessler (Kessler), a principal of the debtor. According to TEI, this agreement provided that the debtor would pay for all insurance as long as the debtor's personal property remained on the premises. On October 17, 1981, upon being advised by Kessler that the debtor was vacating the premises, TEI purchased fire insurance as agreed. However, TEI alleges that personal property of the debtor remained on the property during the entire period when insurance premiums were paid by TEI, and that, therefore, TEI should be reimbursed for premiums.

Defendants maintain that disputed issues of material fact remain which preclude summary judgment in this case. Specifically, they contend that the 1981 Survey is inaccurate, because the metes and bounds of the property vary from those in the Agreement. Further, they claim the 1981 Survey conflicts with an earlier survey of the property performed in 1973 by the Surveyor's predecessor firm (1973 Survey) which revealed no encroachments. Further, the debtor denies the existence of an agreement between Kessler and TEI conditioning TEI's obligation to pay for fire insurance upon the debtor's removal of its personal property from the premises. The debtor claims that any personal property remaining on the premises was abandoned and has no impact on TEI's obligation under the Agreement to maintain fire insurance.

Summary judgment is appropriate only when the record demonstrates "that there is no genuine issue as to any material fact." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 444 (2d Cir. 1980). In a motion for summary judgment, the burden is on the moving party to demonstrate the absence of any material factual issue. In determining whether a question of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the movant and in favor of the party opposing the motion. *Heyman v. Commerce and Industry Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975).

The encroachments shown by the 1981 Survey led to TEI's termination of the Agreement and demand for return of its deposit, which culminated in the present litigation. The accuracy of the 1981 Survey is therefore at the very core of this controversy. The court finds that a genuine issue of material fact exists with respect to the accuracy of the 1981 Survey.

The second issue of fact is whether there was an oral agreement between Kessler and TEI modifying the provision in the written Agreement requiring TEI to maintain fire insurance. Without such a finding of fact, it is impossible to determine who is liable for payment of the insurance premi-

ums between October 1981 and January 1982.

Summary judgment therefore should be and hereby is denied.

It is so ordered.