**INTERNATIONAL ORGANIZATION OF MASTERS, MATES & PILOTS, Plaintiff,**

v.

**MARITIME OVERSEAS CORPORATION, et al., Defendants.**

No. 84 Civ. 7081 (SWK).

United States District Court, S.D. New York.

Dec. 10, 1986.

Vladek, Waldman, Elias & Englehard, P.C. by Seymour M. Waldman, Patricia McConnell, Steinberg & Tugendrajch, P.C. by Burton M. Epstein, New York City, for plaintiff.

Seham, Klein & Zelman by Roger H. Briton, Andrew E. Zelman, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This is an action under Section 301 of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 185, and under New York law, by a maritime union against several industry employers and their designated agent. Plaintiff alleges that the employers repudiated and breached their collective bargaining agreements with the union in violation of Section 301 of the LMRA and the New York law of contracts.

Defendants move for summary judgment. Fed.R.Civ.P. 56(b). In response, plaintiff has cross-moved for summary judgment. Fed.R.Civ.P. 56(a). For the reasons set forth below, both motions are denied as to the federal LMRA portion of plaintiff's claim, and the state law portion is dismissed.

## FACTS

The specific events giving rise to this litigation are undisputed by the parties. Plaintiff, International Organization of Masters, Mates & Pilots (the "Union"), represents Licensed Deck Officers ("LDOs") aboard deep-sea tanker and dry cargo vessels and negotiates collective bargaining agreements in their behalf with vessel operators, including defendants (collectively, the "MOC companies"), either directly or through their trade associations. Defendants are members of the American Maritime Association (the "AMA"), one such trade association, and have authorized the AMA to negotiate their collective bargaining agreements.

Collective bargaining agreements in this industry typically have a three-year term, expiring on June 15 of the third year. For many years, the MOC companies have had such agreements with the Union, the most recent for the period from June 16, 1981 to June 15, 1984. The triannual contract modifications have not always been consummated by the June 15 expiration date, and, in order to avoid economic confrontation, the parties traditionally have entered into written extension agreements which continue the expired agreements in effect until successor agreements have been negotiated. On occasion, the extension periods have continued into the following year.

On April 8, 1984, the Union gave written notice to each contracted company, including the MOC companies, of its intention to modify and amend the collective bargaining agreements which were to expire on June 15, 1984. As of June 15, no negotiations on the new agreements had occurred, and extension agreements were executed. Although the extension agreements had been drafted by the Union for execution by the individual companies, they were altered by agreement of all parties, to permit the AMA to sign on behalf of the MOC companies. The extension agreements, the interpretation of which is crucial to the disposition of this case, provide

> The terms and conditions of the present Collective Bargaining Agreement between the parties, effective as of June 16, 1981 shall be extended and continue in full force and effect while the parties are engaged in bargaining, subject to the provisions of the paragraph below.

The Organization [Union] shall have the right to terminate such extension and this Memorandum by sending the Company a 10 day telegraphic or written Notice of Termination. The sending of such Notice shall effectuate the termination of the said Extension and this Memorandum upon the expiration of the 10 day period following the sending of such Notice. All wage, overtime and benefit increases shall be retroactive to June 16, 1984.

Some negotiations, either by the AMA on behalf of the individual companies or by the member companies themselves, occurred during June and July of 1984. In mid-September, the MOC companies advised the Union that, in light of the Union's continuing delays in responding to their proposals, if a new agreement were not reached by October 1, 1984, the MOC companies would consider bargaining concluded and their contractual relationship with the Union terminated as of that date. During the next two weeks, the parties had several additional bargaining sessions, but agreement was not reached as of October 1, and the MOC companies declared the bargaining at an end and the contracts terminated. The Union commenced this action on October 2 and issued a job action directive to LDOs aboard all MOC companies' vessels on October 3, 1984.

## DISCUSSION

### The Federal LMRA Claim

It is axiomatic that a motion for summary judgment lies only when there is no genuine issue of material fact, Fed.R.Civ.P. 56(c), and that the Court's role is to determine whether there are issues to be tried, *Heyman v. Commerce and Industry Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975).

The central issue presented here is whether there are material issues of fact to be determined in deciding whether the MOC companies' purported termination of their collective bargaining agreements with the Union on October 1, 1984 was effective, thereby relieving them of their duties under the agreements. According to the

MOC companies, (1) the extension of the contract was indefinite as to time and was terminable at will by either party as a result, and (2) the MOC companies, and not the AMA, were the proper parties to terminate their agreements. The Union, on the other hand, contends (1) that the extension agreement by its terms conferred on the Union alone the right to terminate the extension agreement, and (2) that, even if the employers did have a right to terminate, only the AMA could exercise that right. Because the Union never gave the ten day notice referred to in the extension agreement, it contends that the agreements are still in effect.

These are matters of contract construction. However, collective bargaining agreements generally are not governed by common law principles controlling private contracts, but rather are construed in light of industrial "practice, usage and custom pertaining to all such agreements." *Transportation-Communication Employees Union v. Union Pacific Railroad,* 385 U.S. 157, 160–61, 87 S.Ct. 369, 371, 17 L.Ed.2d 264 (1967). This is so because a collective bargaining agreement is different in nature, scope and purpose from the ordinary commercial contract, because its purpose is to establish a system of industrial self government. *Syufy Enterprises v. Northern California State Ass'n of IATSE Locals,* 631 F.2d 124, 125 (9th Cir. 1980), *cert. denied,* 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 839 (N.D.Cal.1981). Only where the language of the contract is unambiguous is the Court free to ignore such factors and consider summary judgment appropriate. *Cf. International Organization of Masters, Mates & Pilots v. Victory Carriers, Inc.,* No. 84 Civ. 7073 (S.D.N.Y. Apr. 19, 1985) [Available on WESTLAW, DCTU database].

Judge Lasker analyzed a similar agreement in a similar factual situation in *District 2 Marine Engineers Beneficial Association—Associated Maritime Officers, AFL–CIO v. Puerto Rico Marine Management, Inc.,* 537 F.Supp. 813, 814–15 (S.D.N.Y.1982) (*"PRIMMI"*), and concluded that

In these circumstances, where no specific provision has been made for the duration

of the agreement, the duration must be judicially terminated by implying the intention of the parties from the nature of the contract and the circumstances surrounding its execution. *See Consolidated Theatres, Inc. v. Local 16, Theatrical Stage Employees,* 69 Cal.2d 713, 73 Cal. Rptr. 213, 447 P.2d 325 (1969). As already noted, the purpose of the extension agreement here was to allow the parties to negotiate toward a new agreement while enjoying the protections of the prior agreement. Such a purpose suggests that the extension was intended for a reasonable time during which negotiations would take place. It also suggests that the good faith negotiations would occur, with a view toward reaching agreement on another contract, and that termination would not occur without reasonable notice by the terminating party. The determination whether these conditions were met depends on the circumstances and practices of these particular parties and this particular industry. Accordingly, a factual hearing is necessary to determine whether PRMMI's purported termination was effective.

*Id.* at 815.

Here, as in *PRIMMI,* the determination whether the conditions for termination of the extension agreements were met can only be made by analyzing the specific circumstances of these agreements in light of the customs of these parties in this particular industry.

While the parties place much weight on the subsequent decision in *PRIMMI,* this is a different matter with different parties, and with potentially different evidentiary materials. As a result, they deserve their own day in court. Accordingly, summary judgment is inappropriate at this time, a factual hearing is necessary to determine whether the MOC companies' purported termination was effective, and the motion and cross motion for summary judgment are denied as to the federal LMRA portion of the Union's claim.

*The State Law Claim*

The Union's claim for breach of contract is also based on New York State common law of contracts. It is settled that the interpretation of collective bargaining agreements is a matter of federal substantive law, and not of state statutory or common law. *Marine Transport Lines, Inc. v. International Organization of Masters, Mates & Pilots,* 636 F.Supp. 384, 387 (S.D.N.Y.1986) (citing *Teamsters Local 174 v. Lucas Flour Co.,* 369 U.S. 95, 105, 82 S.Ct. 571, 577, 7 L.Ed.2d 593 (1962), and that a claim for breach of such an agreement "is governed by federal law, and may not be the subject of a state-law contract ... action," *Id.* at 392.

Accordingly, no action for breach of the collective bargaining agreement can be maintained under New York State law, and that portion of plaintiff's claim brought pursuant to state law must be dismissed.

CONCLUSION

Because there are genuine issues of material fact to be resolved between the parties, summary judgment is inappropriate. Accordingly, defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment as to the federal LMRA claim are denied. That portion of plaintiff's claim brought pursuant to state law is dismissed.

SO ORDERED.