■ HENRI ASSOCIATES, Respondent, v SAXONY CARPET COMPANY, INC., et al., Appellants. [671 NYS2d 46] —Order, Supreme Court, New York County (Carol Arber, J.), entered November 18, 1996, which granted plaintiff's motion for partial summary judgment on its first cause of action to recover a $10,000 retainer fee/deposit from defendants, unanimously reversed, on the law, without costs, and the motion denied.

Plaintiff, Henri Associates, is a partnership, comprised of Herbert Feinberg and his wife. The partnership owns the Feinbergs' townhouse, located at 17 East 74th Street in Manhattan. On July 26, 1989, Mr. Feinberg's decorator, Karen Rosen, came to the showroom of defendant Saxony Carpet Company, Inc. (Saxony Carpet), located in the Decorator Design Building at 979 Third Avenue in Manhattan, for the purpose of selecting flooring materials for the Feinbergs' townhouse. Ms. Rosen selected certain materials based upon a set of construction plans submitted to Pennie Meiselman, of defendant Saxony Carpet. Thereafter, Linda Kovics Design, acting on behalf of the Feinbergs, worked with Gary Meltzer of Saxony Carpet on October 17 and 25, 1990, also for the purpose of selecting flooring materials for the Feinbergs' townhouse.

On June 13, 1991, a representative of defendants first visited the Feinbergs' townhouse. On June 28, 1991, defendants took measurements. During this time period, numerous material selections were made by plaintiff in defendants' showrooms. On July 12, 1991, a proposed work-up of the costs was prepared, totaling $93,030. This estimate was based on the specifications made by the Feinbergs' construction manager, on defendants' site examination of the house, on the measure-

ments defendants were able to make at that time and on plaintiff's selection of materials.*

On July 24, 1991, in a letter agreement, the parties set out the terms to which they agreed for the purpose of renovation to the townhouse. The agreement was signed by plaintiff and defendant Saxony Floor, Inc. (Saxony Floor). Among the provisions of the agreement were the following:

"2. Retainer due at this time (refundable at end of job or used as final payment) $10,000 * * *

"5. Any additions will cost i.e.: labor and/or Material plus 20% service charge;

"6. All repair or change orders based on time and material with 20% service charge * * *

"15. Prices will approximate schedle [sic] attached."

The schedule to which the agreement referred was the July 12 schedule noted above, which stated, "[e]stimate [s]ubject to final [s]election and confirmation of area". On July 29, 1991, plaintiff paid defendants a $10,000 deposit.

According to Mr. Feinberg, on or about August 20, 1991, defendants refigured the work because of errors in the original measurements and calculations and because certain detailing had been omitted or misunderstood in preparing the original estimate. Mr. Feinberg stated that Mr. Greenberg, of defendant Saxony Floor, informed him in early September 1991 that he had reconfirmed and recalculated the contract price because certain detailing of the marble or granite work had been omitted by him and that some measurements had been incorrectly calculated in the original proposal of $93,030. As a result, Mr. Feinberg was informed that the new contract price was $123,372, an increase of nearly 34% above the original contract price.

Defendants, while conceding that they advised plaintiff of the revised $123,372 estimate, claim that the increase resulted from requests by plaintiff to change and substitute certain materials previously requested, as well to add and delete certain other areas from the project where work was originally specified. In support, defendants annexed to their affirmation in opposition several *revised* acknowledgements, dated August

---

* According to defendants, as a result of the state of construction and the inaccessibility of certain areas of the townhouse, defendants were unable to measure all areas and therefore the estimate was based essentially upon the plans furnished by plaintiff's construction manager. In particular, defendants were only able to measure seven of the ten bathrooms and could not gain access to the area where the pool was to be built.

5 through August 20, 1991, for work required to be performed as a result of the Feinbergs' requests.

In any event, Mr. Feinberg informed Mr. Greenberg that the price increase was unacceptable and not competitive. According to Mr. Feinberg, when Mr. Greenberg heard about other price proposals that Mr. Feinberg had previously received, particularly one from Artistic Marble, Inc. (Artistic), Mr. Greenberg "backed off," and asked if Mr. Feinberg would give him the work if he could meet Artistic's bid, to which Mr. Feinberg agreed. Mr. Feinberg stated that he sent Mr. Greenberg a copy of Artistic's bid proposal at Mr. Greenberg's request, but never heard from Mr. Greenberg thereafter.

According to defendants, in an effort to satisfy Mr. Feinberg's request for a competitive bid, defendant Saxony Floors prepared a schedule comparing Artistic's bid with its own. Defendants asserted that Artistic's bid of $89,958 was substantially lower than its own bid since Artistic did not use union labor, as they did, and since the scope of Artistic's work was different than their proposal.

On September 19, 1991, plaintiff, *pro se*, commenced the instant action seeking, in the first and third causes of action, return of its $10,000 deposit. The second, fourth, and fifth causes of action sought damages caused by the delay in construction of the project.

Defendants counterclaimed that plaintiff had breached the July 24, 1991 contract by retaining another supplier and contractor to perform the work and supply the materials requested from defendant Saxony Floors. Specifically, defendant sought $10,000 in damages representing over 100 hours of work performed "in connection with the flooring installation to be made at the [townhouse]" and $18,606 in damages representing 20% of the contract price that it would have been paid if the contract had not been wrongfully terminated and breached by plaintiff.

Plaintiff moved for partial summary judgment on its first and third causes of action, and for dismissal of the counterclaim.

The IAS Court granted the plaintiff partial summary judgment, finding that there was no enforceable contract between the parties. Specifically, it ruled: "While the parties disagree about many of the facts here, the one fact that they agree on is that there was no set price based on the letter agreement. The price was subject to changes. In addition, the 'retainer' agreed to by the parties was by the terms of the letter 'refundable.' Based on the parties['] inability to reach agreement as to a

price, there was never a contract, and the amount paid by way of deposit or retainer must be returned. Defendants argue that they did work that they are entitled to be paid for. *However, the letter agreement is silent on a charge for measurements. Nor did defendants order any materials based on plaintiff's representation that it agreed to the price and wished to proceed. In the absence of such reliance, there is no basis for retention of the deposit.*" (Emphasis added.)

The IAS Court erred in finding that no contract existed between the parties. "In determining whether a contract exists, the inquiry centers upon the parties' intent to be bound, i.e., whether there was a 'meeting of the minds' regarding the material terms of the transaction" (*Central Fed. Sav. v National Westminster Bank*, 176 AD2d 131, 132). A contract must be definite in its material terms in order to be enforceable (*Cobble Hill Nursing Home v Henry & Warren Corp.*, 74 NY2d 475, 482, *cert denied* 498 US 816). Although "a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable" (*Martin Delicatessen v Schumacher*, 52 NY2d 105, 109), "a price term is not necessarily indefinite because the agreement fails to specify a dollar figure, or leaves fixing the amount for the future, or contains no computational formula" (*Cobble Hill Nursing Home v Henry & Warren Corp.*, *supra*, at 483). Instead, "a price term may be sufficiently definite" if it may (1) be determined without the need for new expressions by the parties, (2) be found within the agreement, or (3) be ascertained by reference to an extrinsic event, commercial practice or trade usage (*supra*, at 483). As this Court held in *Conopco, Inc. v Wathne Ltd.* (190 AD2d 587, 588, quoting *Four Seasons Hotels v Vinnik*, 127 AD2d 310, 317), " '[a] contract does not necessarily lack all effect merely because it expresses the idea that something is left to future agreement' ".

Here, the July 24, 1991 letter agreement sets forth various points agreed upon by the parties "for the purpose of work to be done at 17 East 74th Street, New York." Further, the agreement provides that "[p]rices will approximate schedle *[sic]* attached," and the schedule sets forth an estimated price of $93,030.03, which was subject to "final selection and confirmation of area". Thus, the parties agreed that the price would approximate $93,030.03, which was subject to the final selection and confirmation of the area where work was to be performed. Furthermore, the agreement made provision for the cost of any changes in the work to be performed.

As in *Conopco (supra*, at 588), "[t]he [l]etter [a]greement contains all of the essential terms of the contract, and the fact

that the parties intended to negotiate a 'fuller agreement' does not negate its legal effect". The notation that the estimate was "subject to final selection and confirmation of [a]rea" clearly indicates the parties' anticipation that the contract price would change. Thus, an enforceable contract existed.

However, a question of fact exists as to which party breached the contract. As noted, shortly after the letter agreement was signed, defendants informed plaintiff that the revised estimate was $123,372. Defendants claim that the price increase resulted from changes plaintiff made. Plaintiff claims that the increase was due to miscalculations made by defendant. In either case, the contract was not fulfilled. Therefore, a question of fact exists as to whether plaintiff breached the contract in its attempt to obtain additional materials and labor, without paying for those changes, and/or whether defendant breached the contract by increasing the price when an increase was unwarranted.

A question of fact also exists as to whether defendant is entitled to obtain damages based upon its counterclaim. While the IAS Court properly held that the contract does not provide for payment to defendants for taking measurements or other sales or clerical functions, a question of fact is presented as to whether defendants are entitled to (1) the restocking fee they were allegedly required to pay to another supplier once plaintiff informed defendants that the new contract price was unacceptable; and (2) breach of contract damages equal to 20% of the total contract price set forth in the July 24, 1991 letter agreement. Concur—Wallach, J. P., Rubin, Williams, Mazzarelli and Saxe, JJ.