**Miguel Angel GONZALEZ, Plaintiff,**

v.

**DON KING PRODUCTIONS, INC., Don King, Dana Jamison and Hector Elizalde, Defendants.**

**No. 98 Civ. 3935(MP).**

United States District Court, S.D. New York.

Oct. 3, 1998.

Profeta & Eisenstein, New York City (Jethro M. Eisenstein, of counsel), for Plaintiff.

Curtis Mallet–Prevost Colt & Mosle, New York City (Joseph Pizurro, of counsel), for Defendants.

### DECISION

MILTON POLLACK, Senior District Judge.

Plaintiff Miguel Angel Gonzalez ("Gonzalez") brought claims for fraud, tortious interference with contract, and a declaratory judgment against defendants Don King Productions, Inc. ("DKP"), Don King, Dana Jamison and Hector Elizalde. DKP counterclaimed for breach of contract and injunctive relief. These claims are not before the court today and are preserved for future adjudication.

Gonzalez moves pursuant to FRCP Rule 56 for an order voiding the contract between himself and promoter Don King. For the purposes of this motion, Gonzalez's sole contention is that the contract lacks an essential term regarding compensation and represents an unenforceable agreement to agree. For the reasons below, Gonzalez's motion for summary judgment is denied.

### Omission of Essential Terms

When parties fail to state an essential term clearly or omit such a term, courts attempt to ascertain the intent of the parties and enforce the contract.[1] Striking down a

1. See *City of Yonkers v. Otis Elevator Company,* 844 F.2d 42, 46 (2d Cir.1988) (stating that courts may imply terms that the parties intended or "would have intended had they thought about it" and "terms that are fair"); *Heyman Cohen & Sons v. Lurie Woolen Co.,* 232 N.Y. 112, 114, 133 N.E. 370 (1921) (Cardozo, J.) (reversing grant of summary judgment where option agreement failed to specify time in which option would expire); *Henri Associates v. Saxony Carpet Co.,* 671 N.Y.S.2d 46, 48 (1998) (reversing grant of summary judgment where the only price term was an estimated price subject to "final selection and confirmation of area"); *R S Stokvis & Sons,*

contract as "indefinite and in essence meaningless 'is at best a last resort.' " [2]

### Background

Plaintiff Gonzalez, a citizen of Mexico, is a highly ranked professional boxer. Defendant Don King is the chief executive officer and sole owner of DKP. Defendants Jamison and Elizalde are employees of DKP.

This action involves two contracts. The first contract, dated February 15, 1996, is an exclusive Promotional Agreement ("Promotional Agreement") between Gonzalez and DKP. The second contract, dated January 15, 1998, is an agreement ("Bout Agreement") for a boxing match with Julio Cesar Chavez held on March 7, 1998 ("Chavez Match"). The Bout Agreement incorporates some of the terms of the Promotional Agreement.

The Bout Agreement provides for a purse of $750,000 for the Chavez Match. DKP paid this purse, and it is not disputed in this motion.

■ Paragraph 11 of the Bout Agreement is the focus of the dispute here. It gives DKP the option to promote four of Gonzalez's matches following the Chavez Match. The relevant portions of Paragraph 11 provide as follows:

> FIGHTER hereby grants PROMOTER FOUR (4) separate and distinct options to promote FIGHTER in his next FOUR (4) fights following the BOUT hereunder [the Chavez Match] without any intervening bouts.

> ·    ·    ·    ·    ·

> In the event FIGHTER *loses or draws* the BOUT, or any option Bout, FIGHTER'S purse for each bout subsequent to such *loss or draw* shall be negotiated between PROMOTER and FIGHTER but shall not be less than *AS PER PROMOTIONAL AGREEMENT* unless a different sum is mutually agreed upon. The foregoing options as well as all other terms set forth in this Agreement are valid and enforceable regardless of the outcome of any bout provided for hereunder, i.e., *win, lose or draw.*[3]

The Promotional Agreement states the following:

> 4(b) Subsequently, when and if you have *won* your first fight and all of the subsequent fights protected by this Contract, your prize money for each fight shall be negotiated and agreed upon by the parties of this Contract, but shall not be less than ($75,000.00) unless the parties of this Contract agree otherwise.

> ·    ·    ·    ·    ·

> 4(d) In the event that you *loose* [sic] your first fight ... your prize money for each subsequent fight in which you are defeated, shall be negotiated and agreed upon between the parties of this contract, but shall be no less than ($25,000.00) unless the parties of this Contract agree otherwise.[4]

Thus, Gonzalez and DKP apparently agreed that if Gonzalez won the Chavez Match, he would receive at least $75,000 for the next fight, unless the parties agreed otherwise. If Gonzalez lost the Chavez Match, he would receive at least $25,000 in subsequent matches, unless the parties agreed oth-

---

*Inc. v. Kearney & Trecker Corp.,* 58 F.Supp. 260, 266 (S.D.N.Y.1944) (enforcing exclusive representation agreement that contained no provisions regarding quantities, prices or payments). *See generally* RESTATEMENT OF THE LAW (SECOND) CONTRACTS § 204 (1979) ("Supplying an Omitted Essential Term"); 1 SAMUEL WILLISTON, WILLISTON ON CONTRACTS, 4th Ed. § 4:22 (1990 & 1997 Supp.) (stating that when "the parties' language and conduct evidences an intent to contract, and there is some reasonable means for giving an appropriate remedy, the court will strain to implement their intent").

**2.** *166 Mamaroneck Avenue Corp. v. 151 East Post Road Corp.,* 78 N.Y.2d 88, 91, 575 N.E.2d 104, 106, 571 N.Y.S.2d 686, 688 (1991) (citing *Hey-*

*man Cohen & Sons v. Lurie Woolen Co.,* 232 N.Y. 112, 114, 133 N.E. 370 (1921)). The court must find that the contract is so indefinite that it "[reaches] the point where construction becomes futile." *Don King Productions v. Douglas,* 742 F.Supp. 741, 762 (S.D.N.Y.1990) (citing *Cohen & Sons,* 232 N.Y. at 114, 133 N.E. 370, and other New York cases).

**3.** The language, "AS PER PROMOTIONAL AGREEMENT," is manually typed into a blank space on the agreement. Emphasis has been added to the italicized words. Capitalized words appear as they do in the agreement.

**4.** Emphasis added.

erwise. However, neither the Promotional Agreement nor the Bout Agreement explicitly states the purse for subsequent matches in the event of a draw in the Chavez Match.

The Chavez Match ended in a draw. The parties now dispute whether the purse for subsequent matches can be determined with sufficient certainty to enforce the contract.

### Discussion

Gonzalez contends that the omission of a purse for fights following a draw renders the contract so indefinite that it constitutes an unenforceable agreement to agree. *Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 74 N.Y.2d 475, 548 N.Y.S.2d 920, 548 N.E.2d 203 (1989) sets forth New York law on indefinite price terms. In *Cobble Hill*, the New York Court of Appeals stated that an agreement must be "reasonably certain in its material terms" in order to be enforced. *Id.* at 482, 548 N.Y.S.2d 920, 548 N.E.2d 203. However, " ... a price term may be sufficiently definite if the amount can be determined objectively without the need for new expressions by the parties; a method for reducing uncertainty to certainty might, for example, be found within the agreement or ascertained by reference to an extrinsic event, commercial practice or trade usage." *Id.* at 483, 548 N.Y.S.2d 920, 548 N.E.2d 203.

Here, the Bout Agreement states that purses for fights following a loss or a draw are to be determined from the Promotional Agreement. Notably, the Bout Agreement groups losses and draws together, stating that the purse for fights following either "a loss or a draw" shall not be less than as provided for in the Promotional Agreement. It also states that the agreement is enforceable regardless of whether the fight ends in a win, loss or draw. The Promotional Agreement does not explicitly provide a price term for fights following a draw. However, it states that purses for fights following a loss "shall be negotiated and agreed upon ...,  but shall be no less than ($25,000) unless the parties to this contract agree otherwise."[5]

Although the contract is poorly drafted, it is sufficiently definite to survive a motion for summary judgment. The Promotional Agreement contains explicit price terms from which the minimum purse for fights following a draw might be inferred, so the "shall be negotiated" language is not fatal to the contract. Similarly, the Bout Agreement's statement that the purse shall be as per the Promotional Agreement "unless a different sum is mutually agreed upon" does not destroy the contract. When read in context, this provision could be interpreted as setting a default purse of $25,000 if the parties cannot agree. *See Don King Productions v. Douglas*, 742 F.Supp. 741, 763, n. 21 (S.D.N.Y.1990) (stating that similar contract provisions could be construed as setting a default price).

Objective evidence presented at trial may shed light on the intended meaning of the disputed provisions. *See Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317, 1320 (2d Cir.1975) (holding that "[t]he parties have a right to present oral testimony or other extrinsic evidence at trial to aid in interpreting a contract whose provisions are not wholly unambiguous"); *Davis v. Chevy Chase Financial Limited*, 667 F.2d 160, 170 (D.C.Cir.1981) ("We cannot agree that the opaque language of [the contested provision] is so clear that the introduction of relevant parol and other evidence would not aid in the process of construction. At base, the question is one of the intent of the parties; where that intent is unclear, as here, summary judgment is an inappropriate tool for dispute resolution."). Extrinsic evidence of a contract's meaning is admissible if it "does not vary or contradict the written terms of the contract, but merely aids in their interpretation." *Heyman*, 524 F.2d at 1320, n. 2. For example, DKP could show at trial that the parties had treated losses and draws the same in the past, or that the typical industry practice is to provide the same purse for losses and draws. *See Lowell v. Twin Disc, Inc.*, 527 F.2d 767, 770 (2d Cir.1975) (stating that "the court may and

---

**5.** The provision for fights following a win is similar, but provides for a minimum purse of $75,000.

should look to the prior negotiations to determine what was intended"); *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.,* 284 F.Supp. 987 (S.D.N.Y.1968) (allowing extrinsic evidence on the meaning of the word "non-exclusive"). Once a factfinder has heard all the evidence, it may be able to ascertain the parties' intent regarding the missing term.

Resolving all ambiguities and inferences against Gonzalez, the Court cannot conclude that the contract is nothing more than an agreement to agree. Such an interpretation would tend to render the contract's express price terms meaningless and therefore should be avoided if possible. *See Galli v. Metz,* 973 F.2d 145, 149 (2d Cir.1992) ("Under New York law an interpretation of a contract that has 'the effect of rendering at least one clause superfluous or meaningless ... will be avoided if possible.' ") (internal citation omitted). *See generally* RESTATEMENT (SECOND) CONTRACTS § 203 (1979) (stating that "an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable ... or of no effect" and noting that "specific terms and exact terms are given greater weight than general language").

The proper interpretation of the contract presents material factual issues that cannot be resolved as a matter of law. Accordingly, Gonzalez's motion for summary judgment is denied.