**777388 ONTARIO LIMITED and K.R. Moeller Associates, Ltd., Plaintiffs,**

v.

**LENCORE ACOUSTICS CORP., Jack Leonard and Jonathan Leonard, Defendants.**

**No. 99 CV 7953 ILG.**

United States District Court, E.D. New York.

May 25, 2000.

Jeffrey T. Golenbock, Elizabeth A. Jaffe, Golenbock of Golenbock, Eiseman, Assor, Bell, New York City, for plaintiffs.

Steven J. Shore of Schwarzfeld, Ganfer & Shore, LLP, New York City, for defendants.

## MEMORANDUM and ORDER

GLASSER, District Judge.

The defendants Lencore Acoustics Corp., Jack Leonard, and Jonathan Leonard have moved to dismiss the complaint in its entirety pursuant to Fed.R.Civ.Pro. 12(b)(6) for failure to state a claim. They have moved in the alternative for a more definite statement of the claims against them, pursuant to Fed.R.Civ.Pro. 12(e). For the reasons that follow, the defendants' motions under 12(b)(6) are denied, and their motion for a more definite statement is also denied.

## BACKGROUND

The following narrative is gleaned from allegations of the Complaint, which must constitute the factual backdrop to any motion for judgment on the pleadings. Plaintiff 77388 Ontario Limited ("777388") is a Canadian corporation, with its principal place of business in Oakville, Ontario. 777388 is the owner of a trademark (called "Scamp"), and the holder of patents registered in Canada, the United States, and Europe. These trademarks and patents are associated with technology used in products known as the Scamp Sound Masking System. Sound masking is a process by which background sound levels are controlled so as to render ambient speech unintelligible to persons beyond the range of face-to-face conversation. The process is particularly useful in reducing the perceived noise level of open office space.

The Scamp Sound Masking System is manufactured by plaintiff K.R. Moeller Associates, Ltd., under a license from 777388. Moeller is also a Canadian corporation, which also maintains its principal place of business in Oakville, Ontario.

Since 1991, Moeller has sold Scamp sound-masking equipment in the United States through an exclusive distributorship with the defendant Lencore Acoustics Corp., a New York corporation with its principal place of business in Merrick, New York. (Defendants Jack and Jonathan Leonard are officers of Lencore who together run the company.) Pursuant to its distributorship agreement with Moeller, Lencore has purchased more than $3 million worth of Scamp products from Moeller, which Lencore has sold and installed, either itself or through a network of sub-distributors, to many of the largest corporations in the United States.

The distributorship agreement between Moeller and Lencore originated as, and remained, a verbal one, under which Lencore agreed to sell Scamp sound-masking equipment to the exclusion of all other brands, and Moeller agreed to supply Scamp equipment to no other distributors in the U.S. market. In 1994, Lencore, through Jack Leonard, requested that Moeller enter into a written contract with Lencore, but, although drafts of such an agreement were exchanged, it was never executed.

At least as early as 1996, and possibly earlier, Lencore applied to register a trademark called "Spectra" for a sound-masking system. Plaintiffs allege that this application was made in conjunction with a plan that defendants had devised to develop a sound-masking system to compete with, and indeed, to supplant plaintiffs' system in the U.S. market, using information gathered while acting as Moeller's distributor and agent. Thus, defendants never divulged the plan to Moeller, and continued to hold itself out as Moeller's distributor in the U.S.

In 1995, Moeller provided Lencore with engineering specifications and drawings of its Scamp products, in response to prompting from Lencore that it needed such information in order to apply for an ARL listing to satisfy building inspectors in the U.S. These specifications and drawings were trade secrets, provided to Lencore in confidence, and in the expectation that they would be used solely to promote Moeller's interests in this country.

Beginning in the fall of 1998, Lencore began circulating marketing materials

claiming that its sound-masking products were Lencore, rather than Scamp, products. One of the brochures Lencore began distributing around this time referred prominently to the "Lencore Sound Masking System," and less prominently to the Scamp system. Generally, according to plaintiffs' allegations, these Lencore advertisements implied that the Lencore system simply is the Scamp system, and some went so far as to omit mention of the Scamp name or trademark entirely. Other Lencore promotional material referred to purported installations of the "Lencore Sound Masking Systems" at companies where what had in fact been installed was the Scamp system. This material also included images of the Scamp product from which the "Scamp" label had been removed.

Plaintiffs also allege that a review of the Lencore website at the time revealed that the Scamp trademark had been virtually eliminated from descriptions and images of the sound-masking system being sold by Lencore. For example, the Lencore site showed photographs of Scamp products from which the Scamp logo had been removed by some means. Plaintiff further alleges that Lencore used "metatags" on its web site including the "Scamp" name, which practice is designed to foster confusion in the marketplace by attracting browsers looking for products called "Scamp" to the Lencore site.[1]

Moeller promptly notified Lencore that it considered these acts to be in violation of its rights, and requested that Lencore change its promotional materials to give appropriate notice to customers of the Scamp trademarks and patents. Moeller also requested advance copies of all such material in the future. Defendant Jack Leonard told Moeller in response that Lencore had taken steps to comply with Moeller's requests, and enclosed promotional material that included reference to the Scamp trademark and patents. Leonard also conveyed these assurances to Moeller in person.

Lencore nevertheless continued to advertise the "Lencore Sound Masking System" for sale, without reference to Scamp, and continued to represent that it had installed the "Lencore" system at sites where, in fact, it had installed the Scamp system. Moreover in March, 1999, Moeller discovered the web site of Acoustical Solutions Inc., a Lencore distributor. The ASI site made repeated reference to the "Lencore" sound masking system without mention of the Scamp trademark, despite picturing the Scamp product (again, with the identifying logo removed).

Following discovery of the ASI site, Moeller began a more systematic search for Lencore promotional material. In the course of its search it found an article published in January, 1999 in Newsday about Lencore. The article reports claims by Jack and Jonathan Leonard that Lencore has been manufacturing sound-masking equipment for many years, and had installed its sound-masking system in almost 100 million square feet of corporate office space, including specifically named clients whom Moeller knows received Scamp installations. The article also contains a photograph of a "Lencore" product that no longer appears, as before, to be a Scamp product with the Scamp logo removed. Rather, the "Lencore" product pictured in the Newsday article appears to be a duplicate of the Scamp product, apparently produced by Lencore to compete with Scamp. Moeller has also located a

---

**1.** A "metatag" is a sequence of computer code written in Hypertext Markup Language. As the Ninth Circuit described them, metatags may generally be distinguished between " 'description' and 'keyword' metatags. The description metatags are intended to describe the web site; the keyword metatags, at least in theory, contain keywords relating to the contents of the web site. The more often a term appears in the metatags and in the text of the web page, the more likely it is that the web page will be 'hit' in a search for that keyword and the higher on the list of 'hits the web page will appear." *Brookfield Comm. v. West Coast,* 174 F.3d 1036, 1045 (9th Cir. 1999).

July 1998 article in Leadership magazine in which Jack Leonard describes Lencore as the manufacturer of a sound-masking system. In July 1998, Lencore was, under the distributorship agreement alleged, supposed to be acting as Moeller's exclusive distributor in the United States.

Lencore's application to register the "Spectra" trademark for its sound-masking equipment is accompanied by an affidavit, signed by Jack Leonard, indicating that the name has been in use since 1997. In that year, Moeller saw a 20% drop in its U.S. sales through Lencore, and has seen substantial declines in the years since.

In February and March of 1999, Lencore ordered some $50,000 worth of sound-masking equipment from Moeller. Despite having issued invoices and several letters requesting payment, Moeller has not yet received payment for that equipment. In April 1999, Moeller terminated its distributorship agreement with Lencore. Nevertheless, Lencore continues to represent to customers and sub-distributors alike that it continues to distribute Scamp equipment, that Scamp equipment is identical to Lencore equipment, and that Lencore manufactures a sound-masking system that is, in fact, the Scamp system. The result, says Moeller, is widespread confusion in the U.S. market regarding the difference, if any, between the Scamp and Lencore sound-masking systems.

■ The plaintiffs allege that the individual defendants "expressly authorized, directed, and participated in the foregoing acts of Lencore." (Complaint at ¶ 22.)[2]

On the basis of the aforesaid allegations, plaintiffs assert state law causes of action for unfair competition, and misappropriation of trade secrets, as well as Lanham Act violations of false advertising, trademark infringement, and trade dress infringement against Lencore and the individual defendants, in addition to a state law breach of contract claim against Lencore alone. Plaintiffs seek unspecified damages on all of their claims, except the cause of action for breach of contract, on which they seek compensatory damages equal to the alleged balance due, plus interest.

### DISCUSSION

I.  *The Motion to Dismiss*

Defendants move to dismiss the complaint "for failure to state a claim upon which relief can be granted." Fed. R.Civ.P. 12(b)(6). A court must, in deciding such a motion, accept the averments of the complaint as true and construe all reasonable inferences in favor of the non-moving party. *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995). Thus, a complaint should be dismissed on a motion under Rule 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

A.  *Plaintiffs' Claim of Unfair Compe-*

---

**2.** Contrary to the defendants' contentions, this allegation, read in conjunction with the rest of the narrative of Lencore's actions, suffices to state a cause of action against the individual defendants on the unfair competition, misappropriation of trade secrets, and three Lanham Act claims. (The breach of contract claim is not alleged against the individual defendants.) Lencore is a corporate entity, and corporate entities act through their designated officers. The individual defendants are alleged to be officers of Lencore, and are further alleged expressly to have authorized the actions charged against Lencore. Thus, if the claims against Lencore are sufficiently alleged (as this Court concludes they are, for the reasons set forth below), then the claims against the individual defendants are also sufficiently alleged, to the extent that those claims are alleged against both Lencore and the individual defendants. *See Lopresti v. Terwilliger*, 126 F.3d 34, 42 (2d Cir.1997) (observing that "[i]t has long been established, . . ., that a corporate officer who commits or participates in a tort, even if it is in the course of his duties on behalf of the corporation, may be held individually liable") (citation and internal quotation marks omitted).

*tition*[3]

■ The gravamen of an unfair competition claim under New York law is the bad faith misappropriation by one business of another's " 'expenditure of labor, skill, and money.' " *Ruder & Finn Inc. v. Seaboard Surety Co.*, 52 N.Y.2d 663, 671, 439 N.Y.S.2d 858, 422 N.E.2d 518 (1981) (quoting *Int'l News Service v. Assoc. Press*, 248 U.S. 215, 239, 39 S.Ct. 68, 63 L.Ed. 211 (1918)); *see also Computer Assocs. Int'l, Inc. v. Computer Automation, Inc.*, 678 F.Supp. 424, 429 (S.D.N.Y.1987) (essence of a claim for unfair competition is "the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of goods"). Of course one of the elements of an unfair competition claim is infringement of a property interest, such as would be represented by a registered trademark or patent. *See Mastro Plastics Corp. v. Emenee Indus., Inc.*, 16 A.D.2d 420, 421–23, 228 N.Y.S.2d 514 (1st Dep't 1962) (finding no claim of unfair competition made out where plaintiff held no patent in the design of certain drums it had manufactured, and defendant had resold the drums with plaintiff's trademark replaced with its own).

■ Here, there can be no question that plaintiffs have sufficiently pleaded a claim of unfair competition. The Complaint alleges that one plaintiff, 777388, holds registered patents and trademarks on a sound-masking system which the other plaintiff Moeller manufactures under a license from 777388. The Complaint goes on to allege that the defendants, while holding themselves out to the plaintiffs as

**3.** Neither party raised an issue concerning the law that applies to the state law claims raised in this dispute, and both are proceeding as if New York law applies. Jurisdiction over this lawsuit lies under 28 U.S.C. § 1331, which confers original jurisdiction on the district courts over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal question jurisdiction clearly exists over claims raised under the Lanham Act. *Fun–Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1006 (2d Cir.1997). The next question concerns the choice of law rule that applies in non-diversity cases. The question is not entirely settled in this Circuit, *see Pescatore v. Pan American World Airways, Inc.*, 97 F.3d 1, 12–13 (2d Cir.1996), but in this case, at least at this preliminary stage of the proceedings, it seems safe to say in the first instance that the choice of law rules of the forum state should determine what law applies. *See, e.g., Barkanic v. General Admin. of Civil Aviation of the People's Republic of China*, 923 F.2d 957, 961 (2d Cir.1991) (applying New York choice of law principles in action arising under the FSIA). In determining which law to apply, New York gives " 'controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation.' " *Loebig v. Larucci*, 572 F.2d 81, 84 (2d Cir.1978) (quoting *Babcock v. Jackson*, 12 N.Y.2d 473, 481, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963)). Under such interest analysis, "when the domiciles of the parties differ, the location of the injury determines the governing substantive law absent special circumstances." *Gray v. Busch Entertainment Corp.*, 886 F.2d 14, 15 (2d Cir.1989) (per curiam); *see also Bader v. Purdom*, 841 F.2d 38, 40 (2d Cir. 1988) ("As a general rule, New York courts resolve true conflicts in tort cases by applying the law of the place of injury, unless 'special circumstances' warrant a departure from the lex loci delicti rule."). New York courts also distinguish between rules regulating conduct and rules governing loss allocation. "Generally, when the laws in conflict are conduct regulating, the law of the locus jurisdiction applies." *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir.1992) (citing *Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 198, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985)). The locus jurisdiction "has the predominant interest where rules regulating conduct are at issue, because of its interest in affecting the conduct of those who act within the jurisdiction and of a reliance interest on the part of the actors whose conduct is at issue." *Id.* (citing *Schultz*, 65 N.Y.2d at 198, 491 N.Y.S.2d 90, 480 N.E.2d 679). Because the pleadings do not make clear the precise locus of the tortious conduct alleged, and also because neither party has raised the issue (suggesting either that no issue exists over whether New York law applies, or that there is no material difference in the applicable law of the potential jurisdictions), the Court assumes for the purposes of this motion that the locus jurisdiction here is New York, and that New York law therefore applies.

their agents and as distributors representing plaintiffs' commercial interests in the United States, engaged in a systematic campaign to subvert those interests, in two ways. First, plaintiffs allege that defendants distributed deliberately misleading promotional material (in which plaintiffs' sound-masking system was held out as a system that belonged to and indeed had been made by defendants). Second, the Complaint alleges that the defendants, while continuing to represent themselves to plaintiffs as distributors acting to promote plaintiffs' interests and products, began actually to manufacture a sound-masking system of their own, using proprietary information and trade secrets given to them by plaintiffs in confidence.

■ The defendants argue generally that plaintiffs' claims are barred under the Statute of Frauds because the distributorship agreement alleged by plaintiffs was an oral one. Although this contention raises an interesting issue, not briefed by either side, as to whether the doctrine of part performance might serve in this case to take the agreement outside of the Statute, that problem need not be reached in order to resolve the immediate question against the defendants. *See Burns v. McCormick*, 233 N.Y. 230, 231, 135 N.E. 273 (1922) (there must be a showing of "performance unequivocally referable to the agreement, performance which alone and without the aid of words of promise is unintelligible or at least extraordinary unless as an incident of ownership, assured, if not existing" in order for part performance to take an oral agreement outside of the Statute) (citation and internal quotation marks omitted). Thus, it is quite clear under New York law that the Statute of Frauds constitutes no bar to a claim of

unfair competition, for reasons deriving from the principle that tort liability may arise separately from liability under contract. *See Meyers v. Waverly Fabrics*, 65 N.Y.2d 75, 79, 489 N.Y.S.2d 891, 479 N.E.2d 236 (1985) (holding that Statute of Frauds posed no bar to a cause of action alleging that defendant had licensed use of plaintiff's design by others and required those others to credit it with the design, rather than the plaintiff).[4] Accordingly, because the defendants have alleged facts sufficient to make out a *prima facie* case, the defendants' motion to dismiss plaintiffs' claim of unfair competition must be denied.

### B. *The Lanham Act Claims*

#### 1. *False Advertising*

■ Section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125, provides in part:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol or device, or any combination thereof, of any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125. One of the deceptive practices actionable under section 43 is "a

---

4. Defendants have interposed the Statute of Frauds as a defense to all of plaintiffs' claims, but it is plain on the face of plaintiffs' allegations in support of those claims that, at least at this stage in the litigation, such a defense is without effect. In order to make out a sufficient pleading of false advertising or trademark infringement under the Lanham Act, plaintiffs need only allege "a valid mark enti-

tled to protection" and a use of that mark "likely to cause confusion." *Time Inc. v. Petersen Publishing Co., L.L.C.*, 173 F.3d 113, 117 (2d Cir.1999). As will become clearer in the discussion that follows, plaintiffs have done this much, and so, the enforceability of the distributorship agreement they allege does not arise in an assessment of the pleadings for facial sufficiency.

form of false designation of origin known as 'reverse palming off.'" *Innovative Networks, Inc. v. Young*, 978 F.Supp. 167, 177 (S.D.N.Y.1997). A defendant engages in such conduct when it sells plaintiff's products as its own. *See, e.g., Smith v. Montoro*, 648 F.2d 602, 607 (9th Cir.1981) (defendants removed name of plaintiff actor from credits and advertisements of a film in which he appeared, substituting a name of their choosing).

■ Plaintiffs have clearly made out a facially sufficient case of a section 43 violation. With respect to 777388's interest as the owner of patents and trademarks used in the Scamp system, and Moeller's as 777388's licensee, and as manufacturer of the Scamp product line, plaintiffs allege that the defendants have been promoting and selling Scamp products as Lencore products since 1998. Specifically, plaintiffs allege that Lencore has distributed advertisements, by means ranging from brochures to postings on the Lencore website, showing images of Scamp products deliberately promoted as Lencore products. Plaintiffs have also alleged that Lencore has produced a line of sound-masking equipment that it is promoting by means of devices that instill the impression that its line is the same as or a continuation of the Scamp line, thus creating confusion in present and potential buyers of Scamp products. For example, plaintiffs have alleged that one of Lencore's new lines of sound-masking equipment is called the "Plenum Master Series," with components designated by model numbers like "LM4" and "LM6." Scamp also makes a sound-masking system called the "Plenum Master Series," with components designated by model numbers like "PLM4" and "PLM6." Plaintiffs also allege that Lencore has deliberately used the name "Scamp" in metatags to its web site, in an effort to steer Internet browsers looking for information on "Scamp" products to the site, where in turn promotional material may be found that fosters the impression that there is no difference between the Scamp and Lencore line of sound-masking equipment. Taken together these allegations make out two theories under which defendants might be liable under Section 43 of the Lanham Act, and accordingly, the defendants' motion to dismiss plaintiffs' Section 43 claim is denied. *See Brookfield Comm. v. West Coast*, 174 F.3d at 1062–64 (holding that the use of another's trademark in one's metatags creates "initial interest" confusion, which is actionable trademark infringement under the Lanham Act).

### 2. *Trademark Infringement*

■ Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides in part:

> Any person who shall, without the consent of the registrant (a) use in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or devices on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant. . . .

15 U.S.C. § 1114(1). The well established benchmark for trademark infringement under the Lanham Act is likelihood of confusion. *In re Houbigant*, 914 F.Supp. 964, 982 (S.D.N.Y.1995). Plaintiffs have alleged that defendants manufactured a line of sound-masking equipment deliberately contrived to induce confusion in customers defendants had purported to cultivate on behalf of plaintiffs. Plaintiffs have

also alleged that defendants did this while promoting plaintiffs' sound-masking equipment as if it were their own. These are sufficient allegations to withstand a motion to dismiss, and so, defendants' motion to dismiss the Section 32 violation must be denied.

### 3. *Trade Dress Infringement*

■ Trade dress is "the design and appearance of the product as well as that of the container and all elements making up the total visual image by which the product is presented to consumers." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 31 (2d Cir.1995). A claim for trade dress infringement arises under § 43(a) of the Lanham Act, and requires a showing that (a) plaintiff's trade dress is entitled to protection under the Act, and (b) the defendant's dress infringes on the plaintiff's dress by creating a likelihood of confusion. To be entitled to protection, plaintiff's trade dress "must either be inherently distinctive or be shown to have acquired distinctiveness through 'secondary meaning.'" *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 377 (2d Cir.1997).

■ Evaluated in light of the already-noted underlying purpose of the Lanham Act (namely, to protect consumers and manufacturers from deceptive representations of affiliation and origin), it is clear that plaintiffs averments are sufficient to sustain a motion under Rule 12(b)(6). Plaintiffs have alleged that defendants deliberately promoted sound-masking products that actually were Scamp products (and that therefore had the Scamp trade dress), as Lencore products. Plaintiffs also allege that defendants promoted Lencore products with trade dress deceptively similar to Scamp, as if they were indistinguishable from, or continuous with, the Scamp line. It may well be that issues of fact will emerge later in this litigation concerning whether Scamp trade dress really is distinctive, or clothed with "secondary meaning." But at this stage, plaintiffs have sufficiently pleaded the key elements: namely, that they held property interests protected by registered patents and trademarks in a line of products with a distinctive identity at least in the minds of their customers; and that defendants acted to promote confusion among these customers in part by infringing on the design and appearance of those products. Accordingly, the defendants' motion to dismiss plaintiffs' claim for trade dress infringement must be denied.

### C. *The State Claim for Misappropriation of Trade Secrets*

■ To succeed on a claim for the misappropriation of trade secrets under New York law, a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means. *North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38, 43–44 (2d Cir.1999).

■ Plaintiffs have alleged that Moeller provided engineering specifications and technical drawings of its Scamp products to Lencore, in connection with an application for an "ARL listing." Plaintiffs allege that the specifications and drawings were provided to Lencore in confidence, and in the good faith expectation that they would be used solely for the purpose of promoting plaintiffs' commercial interests in the United States, pursuant to an exclusive distributorship agreement with defendants. (Complaint at ¶ 11.) Plaintiffs also allege that Lencore was provided with confidential information relating to customers, pricing, and proprietary software. (*Id.* at ¶ 42.) Certainly technical specifications and drawings relating to products that are manufactured under registered patents are trade secrets, if anything is. *See Hudson Hotels Corp. v. Choice Hotels Int'l*, 995 F.2d 1173, 1176 (2d Cir.1993) ("Under New York law, a trade secret 'may consist of any formula, pattern, device or compilation of information [that] is used in one's busi-

ness, and [that] gives [the owner] an opportunity to obtain an advantage over competitors who do not know or use it.' ") (quoting Restatement of Torts § 757 cmt. b (1939)). Plaintiffs have also sufficiently alleged a confidential relationship with, or a duty on the part of Lencore since, according to the Complaint, the technical specifications were disclosed to Lencore for the sole purpose of allowing Lencore to promote its interests in the United States.[5] Accordingly, the defendants' motion to dismiss the claim for misappropriation of trade secrets is denied.

### D. *Breach of Contract*

Although the defendants have moved to dismiss the entire complaint, they have raised no argument specifically targeting the sufficiency of the plaintiffs' cause of action against Lencore alone for breach of contract. (Complaint at ¶¶ 19, 51–52.) Those allegations are plainly sufficient, and the cause of action is properly pleaded as a state law claim pendent to the claims arising under the Lanham Act, upon which this court has federal question jurisdiction over the lawsuit. *See* 28 U.S.C. § 1367 ("The district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); *Innovative Networks v. Satellite Airlines,* 871 F.Supp. 709, 725–26 (S.D.N.Y.1995) (finding supplemental jurisdiction over

state law claims for tortious interference with contract, unfair competition and misappropriation, *inter alia,* which were pendent to underlying Lanham Act claims). Accordingly, the defendants' motion to dismiss plaintiffs' claim for breach of contract is denied.

### II. *Defendants' Motion for a More Definite Statement*

A motion for a more definite statement is available only if "a pleading ... is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed.R.Civ.P. 12(e). Rule 9(b) requires "averments of fraud ... [to] be stated with particularity." Here, plaintiffs have provided a narrative of defendants' alleged violations of their proprietary rights that suffices to put the defendants on notice of the actionable conduct complained of. *See Conley v. Gibson,* 355 U.S. at 47–48, 78 S.Ct. 99 (describing the ingredients of "simplified 'notice pleading' " under the Federal Rules). It has oft been remarked that the "tendency under the Federal Rules is to discourage motions to compel more definite complaints and to encourage the use of discovery procedures to apprise the parties of the basis for the claims made in the pleadings." *Stromillo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 54 F.R.D. 396, 397 (E.D.N.Y.1971) (collecting cases). The appropriate means for attending to the business of particularizing and specifying issues raised by plaintiffs' Complaint are the procedures of pre-

---

**5.** At oral argument, defendants' counsel pressed the argument that plaintiffs had manifestly failed sufficiently to allege a fiduciary relationship between his clients and the plaintiffs. But again, at this stage of the litigation this conclusion is premature. The plaintiffs have alleged that they made trade secrets, including technical drawings and specifications, available to the defendants on terms that clearly created a relationship of confidence between them that may equally well be termed fiduciary in nature. Of particular significance, in addition to the fact that plaintiffs specifically contemplated that the information provided to Lencore would be used solely for the purpose of applying for a registration that

would promote plaintiffs' interests in the U.S. market, is the fact that defendants are alleged throughout the Complaint to have acted, in essence, as plaintiffs' agents. *See Wilson–Rich v. Don Aux Assocs., Inc.,* 524 F.Supp. 1226, 1233–34 (S.D.N.Y.1981) ("A fiduciary relationship requires the fiduciary to act in the interests of the beneficiary in matters within the scope of the relationship. Even the slightest breach of this fiduciary duty will subject the breaching party to liability. Examples of fiduciary relationships include the relationships between trustee and beneficiary, guardian and ward, agent and principal, and attorney and client.") (citing I Scott on Trusts §§ 2.5, 199, 205 (3d ed.1967)).

trial discovery set forth in Rules 26–37 of the Federal Rules of Civil Procedure, to which the parties are hereby commended.

Accordingly, the defendants' motion for a more definite statement is denied.

## CONCLUSION

For the foregoing reasons, the defendants motions to dismiss the Complaint pursuant to Rule 12(b)(6), and for a more definite statement pursuant to Rule 12(e), are denied.

SO ORDERED.